## WINSLOW M. MAYO v. PHILANDER B. WRIGHT.

*Practice—Malpractice—Pleading—Evidence—Expert testimony—*
*Hypothetical questions—Statement of patient to physician.*

1. Where counsel in their arguments to a jury take positions not warranted by the pleadings and evidence, objection may be at *once* made and a ruling obtained, or the court may be requested to instruct the jury upon the point, and thus correct the erroneous statements; and the *latter* is the *preferable* method.

2. Where, in a suit against a surgeon for alleged malpractice, the declaration did not aver want of qualification and skill in the defendant to practice his profession, and the case was tried on the part of the plaintiff without any effort to show *general* incompetency,—

   *Held*, that it was improper for plaintiff's counsel, in his closing argument to the jury, to urge such *general* incompetency as a ground for recovery; and that the court should have so instructed the jury on request of defendant's counsel.

   *Held*, further, that the testimony of the defendant on cross-examination, against the objection of his counsel, that he had the management of farms owned by him, but had not personally been largely engaged in farming pursuits, while proper and within the range of cross-examination, did not tend to show general incompetency, and was totally insufficient as a foundation for such an argument.

3. Exclamations accompanying pain and descriptive of present physical suffering are admissible in this State as *original* testimony; but in a case of alleged *malpractice* in setting and treating a broken limb, a witness cannot be permitted to testify that at time of making such complaints the injured party said "he thought the bandages were too tight," for the reason that he was not an expert, and, if so, the testimony was hearsay.

4. It is the duty of the court to determine the *propriety* of a question put to an expert witness, and if found proper he should see that it is put in such a shape as to clearly present the facts upon which the opinion is asked; and if of considerable length, embracing a long history of the case, it should be reduced to *writing*, to enable the witness to answer intelligently, and the opposing counsel to cross-examine or offer rebutting testimony.

5. Where, after reciting an *alleged* state of facts as the basis for an opinion by an expert witness as to the treatment by a surgeon of a broken limb, the questioner, in conclusion, asked witness, as a

surgeon, what he had to say of that kind of treatment, which was objected to,—

*Held,* that the question might be regarded as intending to call for the *opinion* of the witness upon the *kind* of treatment indicated, and was unobjectionable.

6. A question to an *expert* witness is not objectionable for *length,* if confined to the *assumed* facts upon which his opinion is desired, and does not contain statements *irrelevant* for that purpose.

7. A question to an expert witness must not contain statements outside of any testimony, but must be confined to that previously given in the case.

8. It is not necessary to ask the opinion of an expert witness in a malpractice case upon any particular part of the treatment, but, taking the whole together, "was it proper or improper?" If improper, the plaintiff must show wherein, and, unless the witness specifies of his own accord, must supplement his testimony by further interrogation.

9. What a patient said to the attending physician concerning his feelings of pain and his sensations, and the replies of the physician concerning his treatment, are part of the *res gestæ,* and proper to be included in a hypothetical question to an expert witness.

Error to Kent. (Montgomery, J.) Argued July 16 and 20, 1886. Decided October 7, 1886.

Case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Smiley & Earle,* for appellant:

An action may be maintained against a physician and surgeon for an injury resulting to his patient, *either* from gross ignorance and want of skill, or from his negligence in treatment; and the *two* elements need not *concur*: Wood, Master and Servant, 341.

To charge a physician or surgeon with damages on the ground of unskillful or negligent treatment, it is not enough to show that the mode of treatment was not that which, in the opinion of others, even medical men, the case required, but the party must show by *other* evidence that the defendant had not *reasonable* and *ordinary* skill, or that, having same, he neglected the proper treatment from inattention and carelessness: *Leighton v. Sargent,* 7 Foster (N. H.), 460; *Patten v. Wiggin,* 51 Me. 594.

A surgeon is not liable for mistakes in the exercise of skill and judgment in treating a case, so long as he endeavors to act faithfully and carefully; and it was a matter for the exercise of defendant's judgment to determine the tightness with which the bandages should be applied: *Leighton v. Sargent*, 7 Foster (N. H.), 460, and cases cited; Ewell, Malpractice, 29; *Tefft v. Wilcox*, 6 Kan. 64.

The law does not require of the country practitioner as high a degree of learning and skill as of surgeons practicing in cities, and having superior opportunities for professional culture and experience: Wharton, Neg. § 734.

It was plaintiff's duty to co-operate with defendant and obey his directions, and to exercise care in the management of his leg; and if he failed to do so, and thereby contributed to produce the result of which he now complains, he cannot recover: Wood, Master and Servant, 340, and cases cited; 1 Hilliard, Torts, 225; Cooley, Torts, 683, and cases cited; *Hibbard v. Thompson*, 109 Mass. 286; *Geiselman v. Scott*, 25 Ohio St. 86.


*Tatem & Jamison*, for plaintiff:

Whether or not the patient suffered unnecessary pain from the treatment, and whether that was produced by too tight bandaging, was a question for the jury: *Hyatt v. Adams*, 16 Mich. 180; *Johnson v. McKee*, 27 Id. 471; 1 Greenl. Ev. § 102.

The measure of skill required is that ordinarily exercised in the profession by the members thereof as a body; and, in determining this ordinary skill, regard should be had to the improvement and advanced state of the profession at the time of the treatment: *Smothers v. Hanks*, 34 Iowa, 286.

The declaration is substantially that adopted by Puterbaugh in his Pleading and Practice (4th ed). See *Leighton v. Sargent*, 7 Fost. (N. H.) 460.

Want of care or skill may be shown by simple evidence of the mode of treatment pursued: Shearm. & Redf. Neg. § 442.

The surgeon is not only bound to use the skill he has, but he is required to have a reasonable degree (ordinary skill). Id. § 435.

It is not error to refuse specific requests when the general charge given covers all the points of law in the case with which the jury have to do, nor where the specific requests have been substantially given: *Ulrich v. People*, 39

Mich. 245; *Fraser v. Jennison,* 42 Id. 206; *Joslin v. Le Baron,* 44 Id. 160.

The law is correctly stated in the charge wherein is defined the degree of skill and care which defendant did contract to bring to his aid: *Smothers v. Hanks,* 34 Iowa, 286; *Howard v. Grover,* 28 Me. 97; *Patten v. Wiggin,* 51 Id. 594; *Landon v. Humphrey,* 9 Conn. 209.

Neither the patient's negligence, fault, nor disregard of instructions is of any importance if it did not contribute to cause the injury: *Haley v. Earle,* 30 N. Y. 208; Shearm. & Redf. Neg. § 32.

The elements of damage will be the inconvenience to the plaintiff under which he rests by reason of the want of proper treatment, and the physical suffering which he is compelled to endure: *Fry v. Dubuque & S. W. Ry. Co.,* 45 Iowa, 416; *Curtis v. Rochester & S. R. R. Co.,* 20 Barb. 282; *Stewart v. Ripon,* 38 Wis. 587.

CHAMPLIN, J. The defendant is a physician and surgeon practicing his profession at Corinth, in the county of Kent.

In October, 1882, the plaintiff was engaged in felling a tree, which, in falling, split at the butt, darted back, and caught plaintiff's right leg between the knee and the ankle, and fractured both bones at about the junction of the middle and lower third, so that both bones protruded through the skin. The soft tissues were torn, and the leg scraped both above and below the wound where the bones protruded. The calf of the leg, a little above the point of fracture, was scraped, and the outside was off, so that the blood was trickling through. Both sides of the ankle were bruised. The upper leather of the heel of the shoe which plaintiff wore was torn from the sole, and the rent extended around to the instep.

The defendant was called to reduce the fracture and care for plaintiff, and to render him such surgical aid as his injury required. He remained under defendant's treatment above three months, when it was found that a bony union had not formed. A provisional callus had formed, but it resulted only in a cartilaginous union.

This action is brought to recover damages for what plaintiff alleges was malpractice in defendant's treatment of the case.

Plaintiff avers in his declaration that defendant was a practicing physician and surgeon, and held himself out to the public as possessed of the requisite skill, knowledge, and qualifications to practice medicine and surgery, and as such physician and surgeon it was his duty and business, amongst other things, to set, adjust, heal, and cure broken limbs and bones; and that, while defendant was exercising his profession, he employed him, for reward, to treat, care for, and cure his broken leg.[1]

"Yet the said defendant, being such physician and surgeon as aforesaid, not regarding his duty during that time, then and there so unskillfully, negligently, and carelessly adjusted the bones of the said broken leg, and did so unskillfully, negligently, and carelessly care for, adjust, and treat the same, during the time aforesaid, that by and through his, said defendant's, want of care and skill, the fractured or broken leg aforesaid has not since united or healed; that there has resulted at the place of said fracture a false joint or ligamentous union; and that said plaintiff has ever since, up to the time of the commencement of this suit, been disabled from work by reason of said negligent, careless, and unskillful setting and adjusting the same, and negligent, careless, and unskillful treatment of the same thereafter."

At the opening of the case to the jury the plaintiff's counsel stated to the jury that the plaintiff claimed improper treatment of the plaintiff's leg in the following respects:

1.  The limb was too tightly bandaged.
2.  That it was improper to remove the splints daily, as it left the fracture liable to be moved.
3.  That the foot was left unsupported, and allowed to settle down out of shape.
4.  That it was improper not to include the joint above and the joint below the fracture in the bandage.

---

[1] See *Hanselman v. Carstens*, 60 Mich. 187 (head-note 1).

5. That the plaintiff was kept too long in bed, and should have been allowed to get up sooner.

Upon the argument in this Court the plaintiff says:

"The plaintiff's claim is that this non-union is the result of negligent, careless, and unskillful treatment of the defendant, and this action is brought to recover damages resulting from such treatment."

This, he says, was insisted upon throughout the trial in the court below, and that he introduced evidence to support that theory. He then states that the treatment was negligent, careless, and unskillful in the five particulars stated above.

This brings us to consider, at this point, the eighteenth, nineteenth, and twentieth assignments of error.

Defendant's counsel contend that the plaintiff excluded himself by his declaration from the right to claim want of qualification and skill in the defendant to practice the profession of surgery, and that the whole case was tried on the part of the plaintiff without any effort to show general incompetency. The record contains the statement that—

"There was no testimony offered upon said trial to show general incompetency as a physician and surgeon on the part of the defendant, or want of skill on his part, except such as is set out in this bill of exceptions."

The record further discloses that—

"The counsel for plaintiff, in the course of his argument to the jury, after the testimony was closed, claimed and insisted that the defendant was generally incompetent, and did not possess the necessary qualifications and skill, to entitle him to practice surgery, and further argued to the jury that the defendant was more of a farmer than a surgeon, and that he devoted too much of his time to farming to enable him to become a competent surgeon."

Two ways are open for counsel for a defendant when the plaintiff's counsel, in his closing argument to a jury,

takes positions not warranted by the pleadings and evidence. One is to object to the statements of counsel, and obtain a ruling of the court upon them, as to whether they are proper or improper to be made; the other is to request the court to instruct the jury upon the point, so that any false or erroneous positions may be corrected. The latter is the preferable method, as it conduces to a more orderly and seemly disposition of the matter in dispute, while a resort to the former interrupts argument, and is apt to foment contention and distract the mind of the jury.

Defendant chose the latter method, and, in view of the argument made by counsel for the plaintiff, requested the court to charge the jury as follows:

"1. The declaration in this cause does not allege that the defendant did not have the necessary skill and qualifications requisite to the performance of the duties of the profession followed by him, and, under the pleadings and the evidence in the cause, the jury must take it as conceded that the defendant, at the time he undertook the treatment of the plaintiff's broken leg, was possessed of the learning and skill necessary to be employed in the suitable care and treatment of the case in question.

"2. The plaintiff, under his declaration and the proofs in the case, is not at liberty to claim general incompetency on the part of the defendant to properly set his broken leg.

"3. In this cause the plaintiff must, if he recover at all, do so on the ground that the defendant did not properly and sufficiently exercise the skill which he in fact possessed."

Each of these requests the circuit judge refused to give to the jury, and did not cover them in his instructions, either in form or substance.

The defendant had been asked on his cross-examination, and had been permitted to testify, against defendant's objection to the relevancy of the testimony, that he had had the management of the farms that he owned, but had not personally been engaged largely in farming pursuits.

This testimony certainly did not tend to show general incompetency to practice his profession of surgery, and was totally insufficient to found an argument of general incompetency upon. Under the declaration and claim of plaintiff, and under the evidence introduced, it was improper, at that stage of the proceedings, for the plaintiff's counsel to urge to the jury general incompetency as a ground of recovery. From all the medical testimony, his treatment appears to have been that ordinarily practiced by the profession. The contention was whether he used ordinary care and skill in the application of his treatment to the particular case. The medical expert testimony was all directed to this inquiry, and was quite equally divided in opinion.

If the claim of general incompetency had been asserted in an earlier stage of the proceedings, or had evidence been introduced for the purpose of showing it, the defendant might have met the case by the introduction of evidence on his part. We can see that such argument and asserted right to recover upon the ground of general incompetency, made at the close of the trial, when the evidence of the medical witnesses as to the careless or unskillful treatment was so conflicting, may have had great weight with the jury, and may have influenced a verdict in favor of plaintiff. And while the circuit judge confined his instructions exclusively to the claim made by the plaintiff, of negligent treatment by defendant, we think, under the circumstances, it was error for him not to give the instructions asked for by defendant's counsel in the above requests.

Error is assigned upon the ruling of the court in permitting inquiries to be made, on cross-examination of the defendant, as to his having been engaged in farming pursuits during the time he had been practicing as a physician and surgeon. The inquiry was proper, and within the proper range of cross-examination.

Witnesses in behalf of plaintiff were permitted to testify to complaints made by the plaintiff as to his leg hurting and paining him a good deal, and with respect to what he said about the bandage being too tight.

Exclamations accompanying pain and descriptive of *present* physical suffering are held to be admissible in this State as *original* testimony. *Hyatt v. Adams,* 16 Mich. 180; *Johnson v. McKee,* 27 Id. 471; *Elliott v. Van Buren,* 33 Id. 49; *Grand Rapids & I. R. R. Co. v. Huntley,* 38 Id. 543.

But it was not proper to give in evidence the opinion of the plaintiff that he thought the bandages were too tight. The witness Burt Westcott had testified that he was there the next Saturday or Sunday after the injury, and he was asked how plaintiff was resting, to which he replied: "He complained of his leg paining him a good deal." He was then asked: "What were these complaints?" This question was objected to as irrelevant. The court overruled the objection, and the witness stated: "He thought it was too tight." Plaintiff was not an expert, and this testimony should have been excluded for that reason, and for the further reason, if he had been an expert, the testimony was hearsay.

Objection was made to a question put to the witness Dr. Wooster, who was produced to testify as an expert. The question was quite lengthy, and was not written out before being propounded to the witness. The court undertook to "settle" the question by requesting the defendant's counsel to state his objections, from time to time, to any portion of the question which he did not consider as warranted by the testimony, and the court ruled upon the objection, either ordering the statement to stand as part of the question, or excluding it therefrom, sometimes also excluding portions upon his own motion. The record then states that the stenographer then read the question as amended at length, and defendant's counsel again objected

to the question as unintelligible. The question as read is not incorporated in the record, very likely for the reason stated by defendant's counsel at the time, that the stenographer could not read from his notes and write at the same time.

We cannot, from the printed record, by striking out and inserting what the court said should be struck out and inserted at the places indicated, so leave the question as to make it intelligible. For instance, the record says that the part of the question between the letter "C" and the letter "D" was then read by the stenographer. It is as follows:

"The foot very soon commences swelling; that the patient does not rest during the night, does not sleep to exceed at any time fifteen minutes, and that he arouses from that sleep, complains that the limb is numb; it appears as though it was in a vise and sleepy, and says that it is too tight."

The counsel for the plaintiff then says:

"I will omit the statement as to the protrusion the second day."

No statement as to protrusion is contained in the paragraph. The paragraph from "H" to "I" reads as follows:

"The same treatment is continued until the flesh, after some days, forms a ridge between the splints, coming above the splints, so that the bandages cut into this ridge of flesh protruding between the splints, and the flesh on these ridges, between the splints, is of a purplish blue color,—dark purple color,—and the foot the same way. Both the knee and the limb has that darkish color, the same as the foot, only not so extensive. The treatment is continued for seven or eight weeks, until the limb loses its natural form and becomes simply shapeless, a squarish form where these splints were applied."

After which the record shows the following to have occurred:

"*Mr. Earle.* I desire an objection to that statement as to the form which the leg assumed.

"*The Court.* I see much that is objectionable; I do not see how a leg can become shapeless, and at the same time square.

"*Mr. Tatem.* Shapeless as to the natural limb.

"*The Court.* It might lose its natural shape.

"*Mr. Tatem.* The leg assuming an unnatural and squarish form."

It is difficult to determine from this colloquy what was done with the objection, or how the objectionable feature was disposed of. The record does not show whether the question was modified, or allowed to stand. And yet it is upon this objectionable part of the question that the witness bases his opinion as to improper treatment. After the question was all read to the witness by the stenographer, he answers:

"I believe I comprehend the question, or the tenor of the question: if this tight bandaging, as described, caused this unnatural condition of the limb. squarish form, as is mentioned, if that is proper treatment? I should say, 'No; it is not proper treatment.'"

It is the duty of the court to determine whether a question put to an expert witness is one proper to be put; but when he has determined that the question as presented may be put, he should see that it is in such shape as to present clearly the facts upon which the opinion is asked; and if of considerable length, embracing a long history of a case, it should be reduced to writing, in order to enable the witness to answer intelligently, and the opposite counsel to cross-examine, or offer testimony in rebuttal.

Objection was also taken to the conclusion of the question, which was:

"I ask you, as a surgeon, what you have to say of that kind of treatment?"

We think the question may be regarded as intended to call for the opinion of the witness upon the kind of

treatment indicated in the question, and was unobjectionable.

Hypothetical questions were put to other expert witnesses, and such questions are given in the record. These questions were severally objected to by defendant's counsel:

1. Because too long, and covers too much ground, and does not confine or direct the witness' attention to any particular point or treatment.

2. It does not challenge the witness' attention to any particular thing which it is claimed was done by the defendant, nor ask his opinion upon any particular part of the treatment, but simply asks him to say what he can about that kind of treatment.

3. Because the question embodies a statement of what it is alleged the patient said to the doctor, and what the doctor said to the patient.

4. The question is not a proper hypothetical question upon any of the testimony in this case.

The first reason alleged in support of the objection is untenable. A question to an expert witness cannot be open to objection on account of its length, so long as it is confined to the facts assumed upon which the opinion of the expert is desired, and does not contain statements irrelevant for that purpose, and not proper to be submitted as a basis of expert testimony. It must not contain statements of which no testimony has been offered, and must be confined to the testimony previously given in the case.

Neither do the other objections to the question appear to be well taken. It was not necessary that the question should ask the witness' opinion upon any particular part of the treatment, but, taking the whole treatment together, in the manner in which it was applied, was it proper or improper? If improper, the plaintiff was bound to show wherein; and unless the witness specified of his own accord, the plaintiff's counsel would be obliged to interrogate him further, in order to show wherein the treatment was careless, unskillful, or negligent.

What the patient said to the doctor concerning his feelings of pain and his sensations, and what the doctor said to the patient in reply or concerning his treatment, were part of the *res gestæ,* and proper to be included in the question.

If the question is not a proper hypothetical question upon the testimony, it is because it contains either statements of fact assumed concerning which no testimony had been introduced, or statements of fact concerning which the jury were as capable of forming an opinion as the expert,—neither of which has been pointed out to us on the argument or brief of counsel, and we shall therefore assume that the question is not open to this objection.

Several errors are assigned upon the charge of the court as given to the jury. We think the charge of the court stated the law correctly.

For the errors pointed out, the judgment must be reversed, and a new trial granted.

CAMPBELL, C. J., and MORSE, J., concurred. SHERWOOD, J., did not sit.