## STOWELL *v.* STANDARD OIL CO.

1. JURORS—VOIR DIRE—DISCRETION OF COURT.

On the trial of an action for damages resulting from an explosion caused by adulterated kerosene oil sold by defendant, it is within the discretion of the court to allow counsel for plaintiff to ask jurors on the voir dire whether they would consider it negligent to extinguish a lighted lamp by blowing across and down the chimney.

2. SAME — CHALLENGE FOR CAUSE — OVERRULING — HARMLESS ERROR.

The overruling of a challenge of a juror for cause, if error, is harmless, where the party challenging had exercised but one peremptory challenge when the panel was completed.

3. NEGLIGENCE—SALE OF ADULTERATED KEROSENE—ACTION FOR DAMAGES—EXPERT EVIDENCE.

On the trial of an action for damages resulting from an explosion caused by adulterated kerosene oil sold by defendant, it was proper to allow an expert witness to describe the process of producing kerosene oil from petroleum, with the purpose of showing that gasoline is the lighter product, since it tended to show what the substance sold was.

4. SAME—PROPERTIES OF KEROSENE.

For a like reason it was competent to snow that gasoline would throw off a vapor at a lower temperature than kerosene oil of the legal test standard, and that oil of the legal test would not ignite under the conditions shown to exist, and that, if mixed with gasoline or other similar substance, it might do so.

5. WITNESSES — EXAMINATION — EXPERTS — HYPOTHETICAL QUESTIONS.

A question to an expert witness calling for an opinion on a state of facts not known to him, or stated hypothetically in the question, is properly excluded.

6. HARMLESS ERROR—REJECTION OF EVIDENCE.

The erroneous rejection of testimony is harmless where the fact is sufficiently shown by the same witness elsewhere.

7. NEGLIGENCE — SALE OF ADULTERATED KEROSENE — STATE OIL INSPECTOR—CROSS-EXAMINATION.

On the trial of an action for damages resulting from an explosion caused by adulterated kerosene oil sold by defendant, where a deputy oil inspector has testified as a witness for defendant, a rigid cross-examination is justified, and comment on his loose method of conducting inspections is within the proper bounds of argument.

8. SAME—PLEADING.

Under a declaration alleging that kerosene oil sold by defendant was "adulterated," it may be shown that the adulteration was the result of improper manufacture as well as by admixture after manufacture.

9. SAME—SUFFICIENCY OF EVIDENCE.

In an action for damages arising from negligence, the fact that plaintiff's case rests largely upon inferences to be drawn from facts proved is not fatal to it, where it does not rest upon mere conjecture.

10. SAME—LIABILITY OF WHOLESALER.

The seller of an article of commerce, not in itself dangerous, is not responsible for consequences to a purchaser from his vendee resulting from defects unknown to the original seller.

11. SAME—STATUTORY PROVISIONS.

The manufacturer or wholesaler of kerosene oil, which is inferior to the test required by Act No. 26, Pub. Acts 1899, is liable for resulting damages to a consumer.

Error to Clinton; Stone, J. Submitted October 19, 1904. (Docket No. 53.) Decided January 30, 1905.

Case by Elmer Stowell against the Standard Oil Company for personal injuries. There was judgment for plaintiff, and defendant brings error. Affirmed.

*H. E. & E. L. Walbridge* (*Alfred D. Eddy* and *John D. Conely*, of counsel), for appellant.

*Lyon & Moinet*, for appellee.

MONTGOMERY, J. The plaintiff's declaration counts upon an alleged unlawful sale to Martin & Green, a firm of grocers, of a quantity of kerosene oil adulterated with

benzine or other dangerous substance; that this mixture was sold and delivered to Martin & Green to be resold' by them; that Martin & Green resold a quantity thereof to the plaintiff; that plaintiff's daughter, Verna Stowell, made use of the same for illuminating purposes; that while attempting to blow out the flame of the lamp in which the oil was being used the same exploded without fault on her part; that in attempting to extinguish the flame caused by the explosion plaintiff suffered severe personal injuries; and that the property of plaintiff, fully described in the declaration, was also damaged.

The plea was the general issue, with notice that defendant would prove that the oil sold to Martin & Green was tested and approved by the deputy State oil inspector, as required by Act No. 26 of the Public Acts of 1899.

To avoid repetition, the questions raised which merit discussion will be considered in the order in which they arose on the trial. On the examination of certain of the jurors on the voir dire, the plaintiff's counsel inquired of individual jurors as to whether the juror would consider it negligent to extinguish a lighted lamp by blowing across and down the chimney. These questions were objected to, but allowed by the court. We cannot say that the trial judge did not exercise a proper discretion in permitting these questions to be answered as an aid to the counsel for the plaintiff in exercising his peremptory challenges. *Towl* v. *Bradley*, 108 Mich. 409.

On the jurors' answering these questions in the negative, the defendant's counsel challenged one of the jurors for cause. The challenge was not sustained, and error is assigned on this ruling. It is doubtful if, in the case of any juror, the examination, taken as a whole, showed any such settled conviction on this question as would disqualify the juror. A complete answer is that the defendant was not harmed by the ruling, as but one peremptory challenge was exercised, and we are satisfied that the defendant could have amply protected itself in all doubtful cases by the exercise of its remaining peremptory challenges. *Peo-*

*ple* v. *Aplin,* 86 Mich. 393; *People* v. *Rush,* 113 Mich. 539; *Luebe* v. *Thorpe,* 94 Mich. 271; *Atlas Mining Co.* v. *Johnston,* 23 Mich. 36; *Brennan* v. *O'Brien,* 121 Mich. 496; *Commercial Bank of Bay City* v. *Chatfield,* 121 Mich. 641.

The seventeenth, eighteenth, and nineteenth assignments of error depend for their force upon the main question, to be discussed under another head.

Assignment 20 is based upon an objection to a question put to an expert—Dr. Palmer—asking for a brief description of the process of producing kerosene oil from petroleum, offered with the purpose of showing that gasoline was the lighter product. The objection stated was that the testimony was immaterial; "that the question they [the plaintiff] allege is that it [the oil in question] didn't come up to the standard of the test; that is the issue involved." It is argued in this court that there was no showing that gasoline was mixed with the kerosene sold to Martin & Green, and that for this reason the testimony was not competent or material. The objection to this question made in the court below did not foreshadow this position, but, on the contrary, rested upon the claim that the testimony had no bearing upon the question whether the oil came up to the standard of the test. It is clear that the inquiry was preliminary, and that, standing alone, it did not prove the plaintiff's contention; but we are not prepared to say that it was wholly immaterial on that question. The testimony as to the qualities of the products of petroleum may have furnished some aid to the jury in determining what the substance sold to plaintiff was. *Schoepper* v. *Chemical Co.,* 113 Mich. 582. For a like reason we think it was competent to show that gasoline would throw off a vapor at a lower temperature than kerosene oil of the legal test standard, and to show by expert testimony that oil of the legal test would not ignite under the conditions and circumstances shown to exist, and that, if mixed with gasoline or other similar substance, it might.

Error is assigned upon a ruling excluding certain hypothetical questions put to the plaintiff's witness Dr. Palmer on cross-examination. The court correctly ruled that the questions called for an expression of opinion upon a state of facts not known to the witness, or stated to him hypothetically in the question.

Otto L. Sprague, a deputy oil inspector, was called by the defendant. His testimony tended to show that he had assumed to inspect the oil shipped into St. Johns by the defendant, and that on making an inspection or test he left with defendant's agent, Cyrus L. Smith, a card reading as follows, all being duplicates except date:

"Michigan legal test, 120 degrees flash. Approved Oct. 2, 1902.

"O. L. SPRAGUE,
"Deputy State Oil Inspector."

The witness testified that this card was at different times delivered to Mr. Smith in advance of an actual test. That at times he went to St. Johns, obtained a sample of oil, and at the same time delivered the card, stating that, if he found the oil not up to standard, he would notify him. It also appeared that at times he had authorized Smith to remove the oil from the tank cars, retaining a sample for use in making the test, and it was clearly open to inference that the oil in question was inspected in this manner. The witness testified that this card did not take the place of the certificate intended under the law to be delivered to the owner of the oil. This statement of the witness the court, on motion of plaintiff's counsel, struck out. Error is assigned on the ruling. While the statement might well have been allowed to stand, we cannot see how its exclusion harmed the defendant in view of the fact that the witness was permitted to testify that he did furnish certificates of inspection to defendant.

Error is also assigned upon certain rulings permitting questions to be put to the witness Sprague relating to the accuracy of his report to the State oil inspector, as the report related to his charges for expenses. A rigid cross-

examination was justifiable in this case. The loose method of conducting these inspections exhibited either ignorance of or indifference to the requirements of the law, and any false statements contained in the report might properly be made the subject of comment, and would bear upon the credibility of the witness. Not only was this inquiry proper, but it follows also that the comment of plaintiff's counsel upon the conduct of the deputy inspector and defendant's agent Smith were within proper bounds of argument.

The defendant contends that the court should have directed a verdict in its favor. The contentions under this head may be subdivided into three:

1. That there was no evidence of adulteration.
2. That the evidence shows that the oil in question answered the legal requirements of flashing at 121 degrees or above.
3. That, as there was no privity of contract between the plaintiff and defendant, no recovery could be had, in the absence of showing that defendant had actual knowledge of the inferior quality of the oil, or had reason to know of it.

As to the first contention, it is said there is no allegation in the declaration that the oil was improperly manufactured or refined, but that it proceeds upon the theory that the oil had been adulterated by admixture with gasoline after its manufacture. We think this is too narrow and technical a view of the averments of the declaration. The gist of the charge in various counts in the declaration is selling a substance as kerosene oil of the standard test, and not adulterated with gasoline or other more inflammable material, whereas the oil was not of the standard test, but was adulterated, etc. The declaration uses the word "adulterated" as descriptive of the substance sold, and, if the plaintiff's theory of the case be maintained, the term is not inapt to describe that substance. It is equivalent to saying that there was mixed with kerosene oil gasoline or benzine. This does not import that the kerosene

was once pure, and of the standard test, and that gasoline had been added. The substance was accurately described if the admixture was a result of the process of manufacture.

The second contention depends upon the question whether the jury were bound to accept as conclusive the testimony of the deputy oil inspector as to the test made, and the testimony of defendant's agent Smith as to the fact that the oil sold to Martin & Green was the inspected oil in its original purity. It is manifest that the so-called inspection fell far short of compliance with the statute, and there was enough in the record to justify the court in submitting the question of the credibility of the witness Sprague to the jury. It is true the plaintiff's case rested largely upon inferences to be drawn from the facts proved; but it often occurs that a case meritorious in itself cannot be otherwise established. In such case the law does not permit a failure of justice unless the case rests upon mere conjecture, which we think is not the case here. *Schoepper* v. *Chemical Co.*, 113 Mich. 582; *La Fernier* v. *Soo River Lighter & Wrecking Co.*, 129 Mich. 596; *Webster* v. *Symes*, 109 Mich. 1.

The rule contended for by the defendant's counsel that a seller of an article of commerce, not in itself dangerous, is not responsible for consequences to a purchaser from his vendee resulting from defects in the article sold, which defects were unknown to the original seller, is supported by abundant and convincing authority, and has been recently affirmed by this court. *Losee* v. *Clute*, 51 N. Y. 494; *Necker* v. *Harvey*, 49 Mich. 517; *O'Neill* v. *James*, 138 Mich. 567.

Does the present fall within the principle of these cases? The statute (Act No. 26, Pub. Acts 1899) provides for an inspection of kerosene oil, and makes it lawful to sell approved, inspected oil. It also renders it unlawful to sell rejected or condemned oil. The act also makes it an offense for any person to sell or attempt to sell any illuminating oils, whether manufactured in this State or not,

before having th seame inspected as provided in this act. This statute was evidently enacted not alone for the protection of the direct purchaser of illuminating oil, but for the benefit of the consumer as well.

In Pollock on Torts (Webb's Am. Ed.), p. 24, the rule is stated as follows:

"The commission of an act specifically forbidden by law, or the omission or failure to perform any duty specifically imposed by law, is generally equivalent to an act done with intent to cause wrongful injury."

A well-recognized exception to the rule of nonliability to a remote purchaser exists in case of a sale of an article dangerous in itself. See *Skinn* v. *Reutter*, 135 Mich. 57 (63 L. R. A. 743), and cases cited. The legislature of this State has recognized and treated illuminating oil not tested and shown to be nonigniting at a temperature of less than 121 degrees, as a dangerous substance, and one who sells it without inspection brings himself within the principle of this exception to the general rule. The case was a proper one for the jury. The charge of the circuit judge fairly submitted the questions of fact. We discover no error.

Judgment affirmed.

MOORE, C. J., and CARPENTER, GRANT, and HOOKER, JJ., concurred.