MATTHEWS *v.* LAMBERTON.

1. APPEAL AND ERROR—ADMISSION OF TESTIMONY—HARMLESS ERROR.

In an action for damages for assault and battery, a question put to a physician as to whether in the treatment which he was required to give plaintiff it was necessary that he make any investigation as to whether or not the patient had a hernia and its answer was harmless error where the objectionable part of the question, as to whether it was necessary to make such investigation, was not answered.

2. EVIDENCE—ADMISSIBILITY—DAMAGES.

In an action for damages for assault and battery, evidence of the conduct of plaintiff in attempting to do work after the assault is admissible to show the extent, nature and probable effects of the injury.

3. SAME—ADMISSIBILITY—OPINIONS—HARMLESS ERROR.

In an action for damages for assault and battery, the affirmative answer of plaintiff's wife as to whether plaintiff after the injury had any pain about his head was harmless error, where the ruling was made by the court that the witness could state what she noticed, and she subsequently testified that while in bed he often moaned and groaned and rolled and tossed from side to side.

4. WITNESSES — EXAMINATION — CORRECTING MISTAKES IN TESTIMONY—QUESTION FOR JURY—HARMLESS ERROR.

In an action for damages for assault and battery, it was harmless error to permit plaintiff's counsel to take an answer of plaintiff upon redirect examination as to whether he understood a question put to him by defendant's counsel and to correct his answer, where the court stated that it was for the jury to say whether he in fact misapprehended the question.

5. SAME—EXPERT TESTIMONY—HYPOTHETICAL QUESTIONS—APPEAL AND ERROR.

In an action for damages for assault and battery, any error based upon a hypothetical question put to a physician, whose answer was not based upon an opinion and indicated a knowledge of the facts acquired as an attending physi-

sian, cannot be complained of by defendant, where no objection was made to the withdrawal of such question and plaintiff's counsel examined the physician as to his actual knowledge of plaintiff's condition, based upon his personal observation.

6. SAME.

In an action for damages for assault and battery, it is not error to allow a physician testifying for plaintiff to answer a question as to whether, if plaintiff's ear was filled with dirt, gravel and blood, as the witness found upon his examination, that would be the natural and most probable way of having germs introduced into the ear, where the answer of the witness was based entirely upon his personal observation and not upon hypothesis.

7. SAME.

A physician who has examined a patient may, in an action for damages for assault and battery, state whether or not the patient is unable to hear.

8. SAME.

It is the better practice to reduce a hypothetical question to writing where the facts are confusing or complicated.

9. SAME.

There is no reversible error in the allowance of a hypothetical question not reduced to writing, where the facts are complicated and confusing, where the jury is instructed that before they can consider a hypothetical question and its answer they must find that the assumed facts have been established by a preponderance of the evidence.

10. SAME—INSTRUCTIONS.

It is harmless error to allow a hypothetical question not reduced to writing which assumes facts set forth in a prior question, where the jury was instructed after the giving of the prior question that before they could consider a hypothetical question and its answer they must find that the assumed facts have been established by a preponderance of the evidence.

11. NEW TRIAL—MISCONDUCT OF SPECTATORS.

It was not ground for a new trial, in an action for damages for assault and battery, that the wife and daughter of plaintiff, witnesses in the case, wept when plaintiff's counsel, in his closing argument, referred to the fact that plaintiff would permanently be affected in his hearing.

12. DAMAGES—ASSAULT AND BATTERY—EXCESSIVE VERDICT.
   In an action for assault and battery, a verdict for $2,500 was
   not excessive where plaintiff lost some teeth as the result
   of the assault, was in bed for a week, and later went to a
   hospital and underwent an operation for hernia, suffered
   the entire loss of hearing in one ear and 50 per cent.
   loss in the other, and expended the sum of $337 for medical
   and hospital fees.[1]

Error to Cass; Des Voignes, J. Submitted October 24, 1917. (Docket No. 119.) Decided December 27, 1917.

Case by William H. Matthews against Frank B. Lamberton for an assault and battery. Judgment for plaintiff. Defendant brings error. Affirmed.

*Coolidge & White* and *Hendryks & Mosier*, for appellant.

*Wilbur N. Burns, C. M. Lyle*, and *Carr & Eby*, for appellee.

Plaintiff brought suit against defendant for damages alleged to have resulted from assault and battery committed upon him by defendant. Upon the first trial plaintiff secured a judgment for $1,000 against the defendant, which was reversed in this court, upon the ground that certain testimony had been erroneously admitted, and that the court had given erroneous instructions to the jury. Upon a new trial plaintiff recovered a judgment in the sum of $2,500 which is now here for review upon writ of error. A brief statement of the facts follows:

The parties are farmers residing upon neighboring farms. It seems to have been reported to defendant that plaintiff had said that defendant had not paid his hired man, one Fred Timm, whereupon defendant, tak-

[1]On excessiveness of verdicts in actions for personal injuries other than death, see comprehensive note in L. R. A. 1915F, 30.

ing Timm with him, went upon the plaintiff's farm to a field where plaintiff was plowing, some 30 rods from the highway, and asked plaintiff if he had made the statement. Plaintiff denied making the statement, but said that he had heard it down town at the hotel. An altercation between the two men followed, and finally resulted in a physical encounter, in which plaintiff was thrown down into the furrow, while defendant, who was on top of him, seems to have administered a rather severe beating. As a result of the affray plaintiff lost some teeth. He was confined to his bed for over a week, and later went to a hospital, where he submitted to a radical operation for hernia, which he claims he suffered as a direct result of the assault and battery. As a further result plaintiff claims to have suffered the entire loss of hearing in one ear, and about 50 per cent. loss in the other. It seems to be undisputed upon the record that he expended for medical and hospital fees the sum of $337. The case was bitterly contested, and was submitted to the jury under a careful charge, to which no exception was taken. A motion for a new trial was made, based upon 18 different grounds, the first 15 upon alleged errors in the admission or exclusion of testimony, the 16th upon the assertion that plaintiff's wife and daughter were guilty of misconduct during the trial, the 17th upon the ground that the verdict was excessive, and the 18th upon the ground that it was against the great weight of the evidence. This motion was denied.

In this court counsel for defendant presents his argument under 17 assignments of error; the first 15 based upon the rulings of the court upon the admission or exclusion of testimony, and the 16th and the 17th upon the refusal of the court to grant a new trial.

BROOKE, J. (*after stating the facts*). The first assignment argued by counsel for defendant is the fourth. The following question was asked:

"*Q.* Doctor, in the treatment which you were required to give to Mr. Matthews on the occasion when you treated him, was it necessary that you make any investigation as to whether or not the patient had a hernia?"

This was objected to as incompetent, irrelevant, and immaterial. After argument the question was allowed, and was answered as follows:

"*A.* I made such an examination as far as I thought advisable or necessary; there were no indications that called for any further examination. I have had occasion to treat patients suffering with hernia, and have had occasion to examine them as the hernia was caused or developed or as it was forming. I have examined them in all stages; an enlarged incomplete hernia might be forming and afterwards become a complete hernia."

It is asserted by counsel for defendant that this is reversible error under the authority of *Maynard* v. *Vinton*, 59 Mich. 154 (26 N. W. 401, 60 Am. Rep. 276). We are unable to agree with this contention, for the very good reason that the objectionable part of the question was not answered. The physician did not testify whether or not it was necessary for him to make the investigation, but did testify simply as to what examination he made.

*Second.* It is argued under the 5th, 6th, and 8th assignments that the court erred in permitting testimony of the witnesses who had observed the plaintiff in his attempts at doing work after the fight. The argument is made that:

"If this testimony was proper, then one seeking to recover damages could go about among his friends and acquaintances and affect all sorts of complaints and injuries, and then call in these friends and acquaintances as witnesses to show the character of work that he was able to perform."

We are of opinion that this testimony was admis-

sible. *Foster* v. *Krause,* 187 Mich. 630 (153 N. W. 1066). See, also, 13 Cyc. p. 204, where the rule is stated as follows:

"Evidence of the conduct, general health and physical condition of the plaintiff both before and after the infliction of an injury, or a comparison of one's health before and after such time, is admissible as tending to prove the extent, nature and probable effects of the injury"—citing cases.

*Third.* Error is assigned upon the following question addressed to plaintiff's wife:

"*Q.* During that time did he have any pain about the head and his—
"*A.* He did."

Objection being interposed, the court said:

"She can state what she noticed."

After which the witness replied:

"*A.* Why, when he was in bed, he often moaned and groaned and rolled and tossed from side to side."

In the light of the ruling of the court and the subsequent testimony of the witnesses, we are of opinion that there was no error.

*Fourth.* Error is assigned upon the action of the court in permitting counsel for plaintiff upon redirect examination of plaintiff to take an answer to the following question:

"*Q.* Now counsel asked you if you stood—if he stayed right there, and you replied that he did. Now I ask you if you understood that question, if—and just what Mr. Lamberton did as he raised his hand."

A colloquy followed, in the course of which the witness said that he did not understand the question put to him by defendant's counsel. After further objection the court said:

"Yes, but he says he didn't understand the question; he has a right of course—it is for the jury, it is

all before them as to whether he did understand it or not. A man always may be called back to correct anything; if he misapprehends questions, it is for the jury to say whether he did misapprehend or not; it is all before them. You may save an exception.

"*A.* He crowded right upon me."

We are unable to discover any reversible error in the foregoing.

*Fifth.* Under this head the 2d, 3d, 10th, 11th, 12th, 13th, and 14th assignments are argued. They all relate to questions addressed to the expert witnesses Dr. Ullrey and Dr. Carr. Dr. Ullrey was the physician who treated plaintiff immediately after the affray and who had treated him for an incomplete rupture some 15 years prior to the injury complained of in this case. Dr. Carr, a physician making a specialty of eye, ear, nose, and throat, and who made an examination of the plaintiff just prior to the trial, gave testimony touching the condition in which he found him, particularly with reference to his hearing. As before recited, it was the contention of plaintiff that although he had suffered from a partial hernia some 15 years earlier, he had completely recovered from that ailment, and that the hernia for which he underwent a major operation after the affray was caused entirely by the injuries inflicted upon him at that time. On the part of defendant it was claimed, and this claim was supported by some testimony, that plaintiff was suffering from a hernia at the time of the affray.

After stating the various claims of the parties upon this point, the court charged the jury as follows:

"If you find that plaintiff was so suffering at the time of the affray from this hernia and had that hernia, plaintiff cannot recover for any alleged injury of rupture or hernia. If you find from the evidence that there had been a recovery as contended by plaintiff from this injury or threatened injury of hernia before the affray, then plaintiff is entitled to recover on

that item.   However, it appears from the testimony
that plaintiff in January of the present year under-
went an operation for this rupture or hernia, and that
such operation was successful.   Therefore you are not
permitted to consider the element of permanent dam-
age or injury by reason of this hernia.   And upon the
question of damage on this item, no damage can be
rendered for causing rupture to the plaintiff, unless
you find that such rupture was the direct result of
blows or violence inflicted by the defendant upon the
body of the plaintiff."

The• first specific assignment under this head is
based upon a hypothetical question propounded to Dr.
Ullrey.   Dr. Ullrey's answer to this question indicated
a knowledge of the facts acquired as attending physi-
cian, and was not based upon opinion, whereupon the
court instructed the jury:

"So the hypothetical question will be stricken out,
gentlemen, and what the court said in relation to it to
you, you will not consider that at all.   Counsel may
now proceed to examine the witness anew."

Thereafter the physician was examined as to his
actual knowledge of plaintiff's condition, based upon
his personal observation.   No objection appears to
have been made by defendant's counsel to the with-
drawal of the hypothetical question.   He cannot now
complain.   1 Thompson on Trials (2d Ed.), § 722.

Error is assigned upon the following question pro-
pounded to Dr. Ullrey:

"Well, if his ear was filled with dirt, gravel, and
blood, as you found upon your first examination, that
would be natural—the most probable way of having
germs introduced into the ear, would it not?

"*Mr. Hendryx:*   Wait a minute, now, we object to
that question as leading, and as not based—as not a
properly hypothetical question, and assumes facts that
are not proven, and asks for that which is not within
the range of expert testimony."

198—Mich.—48.

The question being answered in the affirmative, Mr. Hendryx said:

"Your honor, I move to strike that out, the question isn't—and the answer to it—isn't whether that would be a probable way, but it was the probable way, and for that reason it's highly objectionable.

"*The Court:* This is the physician. If this testimony was received upon a hypothetical basis, your objection would be good; but here it is a physician who testifies to seeing the condition and administering the first treatment, and I will let it stand for what it may be worth to the jury in arriving at a determination."

A careful reading of the entire testimony given by this physician indicates that it was based entirely upon his personal observation and knowledge, and not upon hypothesis. The ruling was correct.

It is next urged that error was committed in permitting the following question to be answered by Dr. Carr, the expert who had made an examination of the plaintiff, particularly with reference to his hearing:

"State, doctor, from the condition which you found upon your examination, whether or not the plaintiff's hearing is or is not destroyed in his right ear."

To which the physician replied:

"Why, I know that the hearing is destroyed in the right ear."

Counsel criticize this by saying:

"How did he know it? He never told the jury why. Neither the question or his answer gives any reason. The reason, if any, was lodged in his own breast. How was defendant to meet testimony of this character? No facts were stated upon which the opinion was based, and he was powerless to contradict."

A very extended cross-examination of this physician was entered upon in the course of which it was brought out that the plaintiff's condition of health as to his deafness might be due to causes other than the injury. We presume that after examination a com-

petent physician may be able to determine whether a patient is or is not deaf. We can see no impropriety in the course of the examination followed herein.

The next assignment of error is predicated upon the allowance of a hypothetical question asked Dr. Carr. The question, with various amendments, objections, and colloquy, covers some four pages of the record. After stating the facts it proceeds:

"Assuming all these facts to be true, state, doctor, whether in your opinion the injuries to the ear, the head and abdomen might have been the natural and approximate results of the fight.

"A. It is my opinion that the present condition would be the natural results."

While the better practice requires (*Mayo* v. *Wright*, 63 Mich. 32 [29 N. W. 832]; *Jones* v. *Village of Portland*, 88 Mich. 613 [50 N. W. 731, 16 L. R. A. 437]) the reducing of a hypothetical question to writing, where the facts are confusing or complicated, we are unable to find reversible error in its allowance in this case. Immediately after the question was answered the court instructed the jury as follows:

"Now, gentlemen, lest I forget it, and it would be harmless if I instruct you at this time. Hypothetical questions are permitted under the law to be asked in certain cases. But before you can consider a hypothetical question in any manner in any case, you must find as a matter of fact that the conditions as stated in the hypothetical question have been proven by a preponderance of the evidence, to wit: All of the things that enter into that question which are assumed. Before you can consider the reply or the answer of a witness to a hypothetical question, you must have found that all of the elements that enter into that question have been proved to your satisfaction by a preponderance of the evidence."

Objection is made to another hypothetical question asked this witness immediately following that last considered. The objection is made that:

"In the question here objected to counsel does not set forth all of the assumed facts relied upon. To supply this deficiency counsel assumes all the facts which were stated in a former hypothetical question."

In the light of the caution delivered by the court upon this point above quoted, we think there was no reversible error. The next two assignments discussed are of like character, and require no further discussion. With reference to all these assignments, it may be said generally that the testimony of Dr. Carr was merely cumulative in character. Every fact testified to by him was supported by other testimony sufficient if believed by the jury to warrant their verdict.

*Sixth.* It is asserted that the court should have granted a new trial because of the alleged misconduct of plaintiff's wife and daughter in the course of the trial. Touching this allegation, the court in denying a motion for a new trial said:

"During the progress of the trial the wife and daughter of plaintiff occupied a seat back of counsel a great portion of the time. They were witnesses in the case. The court did not observe any unseemly conduct on their part, neither did defendant's counsel call the court's attention or make any objection at the time. The court did notice that during the closing argument by plaintiff's counsel when he referred to the fact that plaintiff would always be affected in his hearing that there were tears in the eyes of both wife and daughter, and they placed their handkerchiefs to their eyes, but there was no sobbing or crying aloud, or any unusual emotion noticeable to the court, and it is my opinion that it was not responsible in any manner for the verdict."

The question here raised is one which addresses itself particularly to the sound discretion of the trial judge. We have read the affidavits in support of the motion upon this point, and are not disposed to disagree with his conclusion.

*Seventh.* While the verdict was substantial, and,

considering the situation of the parties, might perhaps be considered large, the learned circuit judge refused to disturb it on the ground that it was excessive. Upon this record we are of opinion that his disposition of this question should not be questioned. On the whole we are satisfied that throughout the rather extended trial and under a careful charge, the rights of the defendant were fully protected. A different result would not likely be reached on another trial.

The judgment is affirmed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and FELLOWS, JJ., concurred.