[Civ. No. 7262. Second Appellate District, Division Two.—November 15, 1932.]

RIKIMATSU KAWAMURA, Respondent, v. LEO HONEK, Appellant.

Finlayson, Bennett & Morrow and Henry L. Knoop for Appellant.

J. Marion Wright for Respondent.

STEPHENS, J., *pro tem.*—This appeal comes after a trial wherein the plaintiff was awarded $3,000 as damages for a minor son's death. Appellant makes the point that the jury

was without a necessary factor in assessing damages because, as he claims, the evidence was not sufficient for the approximation of the plaintiff's life expectancy. ▮ Of course, the father's life expectancy is an important element, as he was not only entitled to the son's services and earnings during the nonage, but was entitled to such society, comfort and protection as under the circumstances obtaining could reasonably be expected from the son so long as they both should live. (*Sneed* v. *Marysville Gas etc. Co.*, 149 Cal. 704 [87 Pac. 376].)

Respondent's son was a normal, healthy boy of seventeen when the accident cost him his life. He was obedient, attended junior high school and helped his father in his work on Saturdays and at other times, but was paid nothing therefor. Respondent was a Japanese gardener, and had been caring for residential lawns for six or seven years, earning approximately $210 per month. He was injured in the accident that proved fatal to the son and was confined in a hospital for two months. He had sustained several broken bones and flesh cuts and there was some injury in the pelvic region. When released from the hospital he walked with one crutch, but soon abandoned it and worked a few hours a day. At the time of the trial he could work half a day but suffered from pain where bones had been broken and in the region of the pelvis. The broken bones seem to have united properly. At that time he was earning $80 per month. Respondent appeared in court and testified.

As we have no question here relating to damages to respondent by reason of his physical injuries, testimony relating thereto is only important to us as bearing upon his probable life expectancy. Why respondent did not make his case clearer by testimony as to his age, his health, his family history or by the introduction of life tables, etc., we cannot inquire. The reason is not disclosed by either the direct or cross examination. The testimony presented was given to the jury under proper instructions and a verdict was had. The sum of damages is not of such an amount as would indicate in and of itself that it was arrived at through passion, prejudice or speculation. (*Harrison* v. *Sutter etc. Ry. Co.*, 116 Cal. 164 [47 Pac. 1019]; *Mize* v. *Hearst*, 130 Cal. 630 [63 Pac. 30].) It cannot be claimed that the testimony is immaterial, irrelevant or incompetent. The very

nature of the case requires the jury to assess damages, if any, without the aid of a fixed formula. No testimony can change that. (*Storres* v. *Los Angeles Tr. Co.*, 134 Cal. 91, 94 [66 Pac. 72].)

It is obvious that the jury could take the testimony given them, including its own view of respondent and his demeanor, and with the aid of common knowledge approximate the latter's age and life expectancy. That such common knowledge can be used by jurors, not to supply testimony, but to make the testimony received intelligible, is supported by much authority. Indeed, no evidence in any case would be intelligible if neither the judge nor jury could see and understand it in the light of common experience. We cite the following authorities to the point that the jury can make use of common knowledge in the consideration of testimony introduced in a case: *Washburn et al.* v. *Milwaukee etc. R. Co.*, 59 Wis. 364, 374 [18 N. W. 328] ; 5 Wigmore on Evidence, 2d ed., sec. 2570 ; note 11, 31 L. R. A. 491. ''Again, in construing and applying testimony, reasonable inferences and deductions may be made by the jury, and conclusions may be reached that lie quite beyond the mere letter of the evidence.'' (*White* v. *Hammond*, 79 Ga. 182 [4 S. E. 102, 103].) ''A distinction was taken in those cases [referring to cited cases] as to the juror's applying his own general knowledge and experience to the examination of the case, in estimating the weight of the evidence and in assessing damages. While to this extent the juror may properly call to his aid his personal knowledge, learning and experience, as was properly held in those cases, yet no sanction was given to his acting upon his knowledge of a particular fact, known only to himself, and not a matter of common observation or general knowledge.'' (*Schmidt* v. *New York Union Mut. etc. Co.*, 1 Gray (Mass.), 529, 536; *Beveridge* v. *Lewis*, 137 Cal. 619, 628 [67 Pac. 1040, 70 Pac. 1083, 92 Am. St. Rep. 188, 59 L. R. A. 581] ; *Evarts* v. *Santa Barbara etc. Co.*, 3 Cal. App. 712, 715 [86 Pac. 830] ; *Steele* v. *Marsicano*, 102 Cal. 666 [36 Pac. 920] ; *Meek et al.* v. *Pacific Elec. Ry. Co.*, 175 Cal. 53, 55 [164 Pac. 1117].)

The exact point discussed herein is but a part of the larger subject of knowledge of jurors and its application in adjudging facts. Worthington in his interesting little volume entitled ''The Power of Juries'', on page 58, states that he

gets the following from Glanville: "When the Knights made the recognition . . . the right would be known to all, or all might be ignorant of it. If none of them were acquainted with the truth of the matter, and this was testified in court upon their oaths, recourse was had to others, till they found those who knew the truth of the matter, and some not, the latter were to be rejected and others summoned to court, till twelve at least could be found who could agree. But if some of the jurors should decide for one of the parties, and some for the other party, then other jurors should be added, until twelve at least were found, who agreed in favor of one party. Each of the Knights were to swear that he would not utter what was false, nor knowingly be silent as to the truth. With respect to the knowledge requisite on the part of those who were sworn, they were to be acquainted with the matter, either from what they had personally seen and heard or from the declarations of their fathers, and by such other means as had equal credit, as if falling within their own proper knowledge." From this extreme practice, wherein the best jurors were those who knew the most about the matter at hand, we have come to the other embarrassing extreme, when in some American trials the best jurors are assumed to be those most ignorant of anything. The best authority frowns upon the application by jurors of special knowledge of ·facts outside of testimony given in open court, but encourages the application of common knowledge to a better understanding of such testimony. Of course, the common knowledge of one jury might be very different from that of another; but no definite rule as to what is common knowledge can be made. The more intelligent the juror the better he will apply common knowledge in the understanding of testimony and in making proper deductions and inferences therefrom.

Appellant states in his opening brief: "The issue on this appeal is: *Can a jury assess other than nominal damages for death by wrongful act without the aid of some substantial evidence disclosing with reasonable certainty the probable expectancy of life of the statutory beneficiary?*" (Italics appellant's.) The argument in his reply brief relative to testimony sufficient to justify the jury in finding damages for services of the son during nonage seems to broaden the issue beyond this statement. However, we take this argument

to be solely in response to respondent's argument that the issue as to life expectancy is not of prime importance, because the damages fixed may well be for the son's services during his minority alone. We think the view we take of the issue as originally defined makes it unprofitable to discuss the latter point.

The judgment is affirmed.

Works, P. J., and Craig, J., concurred.