## HUPP MOTOR CAR CORPORATION v. WADSWORTH et al.

### No. 8263.

Circuit Court of Appeals, Sixth Circuit.

June 5, 1940.

Fred L. Vandeveer, of Detroit, Mich. (Vandeveer, Vandeveer & Haggerty, of Detroit, Mich., on the brief), for appellant.

Carl Runge, of Detroit, Mich. (Robert S. Marx, Carl Runge, and Roy G. Holmes, all of Detroit, Mich., on the brief), for appellees.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

ALLEN, Circuit Judge.

Appeal from a judgment in favor of appellees, based on a jury verdict.

Appellees, residents of California, instituted this action as sole heirs of Thomas E. Wadsworth, who was killed in an automobile accident in California on July 17, 1936. The accident was alleged to have resulted from the negligence of appellant in assembling and inspecting the automobile, manufactured by it, and involved in the accident. Wadsworth had purchased the car, which was new, about six weeks prior to the accident. Upon the day in question he, with members of his family, was driving at a speed of about 35 miles per hour, along a dry, smooth, level, cement road. The car suddenly veered to the left, almost to the white line marking the center of the road, then swerved to the right almost off the cement, back again slightly to the left and then to the right, running off the cement and crossing the oil and gravel shoulder about 10 feet wide. It then hit a heavy concrete culvert which crossed the ditch and extended about 8 inches above the level of the surface of the road. The car continued for about 45 feet and stopped in a field, turning over on one side. Wadsworth died on the same day from injuries received. Immediately after the accident it was found that the pitman arm of the steering gear, which should be held upon the ball stud of the steering drag link by a castellated nut secured by a cotter pin, was disconnected and that the nut and cotter pin were missing. One of the tires at that time was deflated, but no witness stated which tire it was. It is appellees' theory that the steering gear became disconnected and inoperative through appellant's negligent failure to insert the cotter pin, thus allowing the retaining nut gradually to work off and permit the steering gear to become disassembled. Appellant's theory is that the accident was caused by a puncture of the tire on the left front wheel. Appellant's motions for directed verdict and for judgment notwithstanding the verdict were denied.

Appellant's first contention is that the court erred in refusing to receive opinion evidence as to how an automobile which had a punctured or deflated tire on the left front wheel would act on the road. The court correctly refused to admit such evidence. There was no proof that any tire at any time was punctured, nor that there was a blowout, nor that any tire had been deflated before the accident. The proof that a tire was deflated when the car was found in the field does not show that it was de-

flated prior to the accident. The only evidence that the left front tire was the one deflated is presented in the testimony of a witness who did not see the car at the scene, but arrived at his conclusion by observation of a photograph of the wrecked car made in a garage eleven days after the accident. The front end of the car was then supported by a jack, and both front wheels were raised off the floor. The witness testified that the left front tire was deflated when the picture was taken. A highway patrol officer testified that he could "see distinctly" but one tire mark on the shoulder of the road when he examined the scene of the accident. From this evidence appellant seeks to establish proof sufficient to go to the jury that the allegedly deflated tire made the allegedly single track, and therefore that the deflation occurred prior to the accident. As to the admission of evidence, the law of Michigan controls. American Issue Pub. Co. v. Sloan, 6 Cir., 248 F. 251, 253; Nashua Savings Bank v. Anglo-American Land, Mortgage & Agency Co., 189 U.S. 221, 228, 23 S.Ct. 517, 47 L.Ed. 782. The testimony proffered does not exclude the existence of other tire marks, nor does it constitute substantial evidence of the existence of a deflated tire prior to the accident. It is axiomatic that a hypothetical question calling for expert opinion must be based upon the facts in evidence. This also is the law of Michigan. Appellant did not properly lay the ground for the hypothetical questions which the court refused to permit it to ask the expert. The expert could not testify as to his opinion that a deflated tire on the left front wheel caused the accident unless the evidence indicated by a substantial degree of proof that the tire was deflated before the accident occurred. Since the questions proffered embodied facts not shown in the evidence, this line of questioning was properly excluded. Mayo v. Wright, 63 Mich. 32, 29 N.W. 832; Stowell v. Standard Oil Co., 139 Mich. 18, 102 N.W. 227.

Appellant's second contention relates to statements of fact made by the court in the presence of the jury, as to what facts had or had not been proved. This contention also is without merit. If the statements were erroneous, they were cured by the instructions in which the court not only refrained from stating its opinion as to what the proof showed, but emphasized the fact that it left that question to the jury to decide.

Appellant's third contention is that the court erred in instructing the jury as to the question of damages. The court did not take into consideration the expectancy of the dependents upon the possible remarriage of the widow. No objection was made to the court's charge on this point, and, under Rule 51 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, it is not reviewable.

Also we think that the court's instructions as to the method of computing damages were correct. Upon this question the case is controlled by the law of California. The measure of damages in an action for tort is determined by the law of the state where the tort was committed. Quinnette v. Bisso, 5 Cir., 136 F. 825, 841, 5 L.R.A.,N.S., 303; Thompson Towing & Wrecking Ass'n v. McGregor, 6 Cir., 207 F. 209, 219; Wynne v. McCarthy, 10 Cir., 97 F.2d 964.

The applicable provision of the California Code of Civil Procedure, Section 377, is that "In every action under this and the preceding section, such damages may be given as under all the circumstances of the case, may be just." The California cases hold that under this provision the amount of the damages is for the jury to determine, and it is not required to adopt any fixed formula. Bond v. United Railroads of San Francisco, 159 Cal. 270, 113 P. 366, 48 L.R.A.,N.S., 687, Ann.Cas.1912C, 50; Dallas v. DeYoe, 53 Cal.App. 452, 200 P. 361; Herron v. Smith Bros., Inc., 116 Cal.App. 518, 2 P.2d 1012; Kawamura v. Honek, 127 Cal.App. 509, 16 P.2d 150; Myers v. San Francisco, 42 Cal. 215; Valente v. Sierra Ry. Co. of California, 158 Cal. 412, 111 P. 95. Hence no reversible error exists in the charge as to the measure of damages.

The principal question in the case is presented by appellant's contention that the District Court erred in submitting the case to the jury. It is appellees' theory that the accident was caused by the negligent failure of appellant, the manufacturer, to insert a cotter pin in the ball stud of the steering drag link to retain the nut which held the pitman arm on the ball stud, by which omission the parts of the steering mechanism were disassembled, causing the driver to lose control of the car. The pitman arm is a metal part which fits down over the ball stud in a drag link steering assembly and is held upon the ball stud by a castellated nut open at both ends. The nut is screwed upon the thread end of the ball stud to a point where it is beyond a small hole passing completely through the ball stud. This is the cotter pin hole in which a cotter pin is inserted so that the nut will not work out, and permit the pitman arm to disengage itself from the ball stud.

Four witnesses examined the automobile shortly after the accident, in the field where it finally came to rest. At that time the pitman arm was completely disconnected from the ball stud, and neither the castellated nut nor the cotter pin was in position or found in any part of the steering gear. Neither of these parts was ever located or produced in evidence.

Witnesses testified to the following circumstances: It was shown that the cotter pin hole was at least partially plugged with grease. The threads of the ball stud were in no way stripped or torn, indicating that the loss of the nut could not have been caused as contended by appellant, by the splitting or destruction of the nut when the car struck and passed over the stone culvert. The threads upon which the nut normally rested were shown to be shiny, without evidence of rust, indicating that the nut had been properly placed in position when the steering gear was assembled. The taper of the ball stud and the orifice of the pitman arm showed wear. From these facts the jury might rightfully have inferred that the pitman arm had been loose. It was testified that otherwise no wear would have been shown on the taper. Concededly, if the nut was tight, holding the ball stud closely in the socket of the pitman arm, there would be no wear. Thus substantial evidence was introduced tending to show that the pitman arm had been loose on the taper of the ball stud when the accident occurred. Two experts who examined the pitman arm and the ball stud with the naked eye, with various magnifying glasses, and in cross-section under the microscope after the ball stud had been sawed apart, testified that evidently the nut had been working loose, and stated as their opinion that no cotter pin had ever been properly inserted, if inserted at all, in the cotter pin hole.

The fact that this evidence was contradicted by certain of the witnesses does not aid the appellant. There was substantial evidence that the accident was caused as alleged by appellees. The case was prop-

erly submitted to the jury, and the court did not err in denying the motion non obstante veredicto.

The judgment is affirmed.