The Henry C. Hart Manufacturing Company v. Mann's Boudoir Car Company.

*Practice in circuit courts—Conduct of counsel on argument—Sale—Fraud—Requests to charge.*

1. Counsel, in their argument to the jury, must be permitted to state such inferences of fact as they in good faith draw from all the circumstances of the case, and what would very likely follow should such inferences prove correct.

2. The appellate court will not review exceptions taken for the first time in that court to statements made by counsel in their arguments to the jury.

3. On a review of the testimony, the Court held that the finding of the jury as to the person to whom plaintiff gave credit for the goods sold could not be disturbed, no errors of law having intervened.

4. Where in a suit to recover for goods sold and delivered the main point in dispute was as to the person to whom the credit was given, there being no allegation of fraud in the pleadings, nor was the question involved in the testimony any further than included in the failure to pay plaintiff's claim,—

*Held,* that special questions involving fraud and deception on the part of plaintiff in rendering its account were properly refused.

5. Requests asking the court to give its view as to the weight which should be given to certain portions of the testimony in a case, held properly refused.

Error to Wayne. (Speed, J.) Argued February 3 and 4, 1887. Decided April 28, 1887.

Assumpsit. Defendant brings error. Affirmed. The facts are stated in the opinion.

*George S. Hosmer,* for appellant.

*Bowen, Douglas & Whiting,* for plaintiff.

Sherwood, J. This case is assumpsit for goods sold by

the plaintiff to the defendant. The balance claimed to be due the plaintiff is the sum of $2,009.49.

The plea is the general issue, and the only question in the case is, to whom were the goods sold and credit given,—to the company, or to W. D. Mann personally?

The cause was tried by jury, and verdict rendered for the amount claimed by plaintiff. The case is now before us for review.

Counsel for the defendant, at the close of the trial, requested the court to direct a verdict for the defendant. We do not think the case a proper one for such direction, and the court did not err in refusing the request. The main question in the case was one of fact, and it has been found against the defendant by the jury, and it only remains to determine whether or not the circuit judge erred in any of his rulings upon the trial.

We do not think the defendant's case was prejudiced by what was said by the learned counsel in his remarks to the jury. Counsel must be permitted to state such inferences of fact as he in good faith draws from all the circumstances of the case in making his argument to the jury, and what would very likely follow if such inferences should turn out to be correct. Nothing more was said or done by plaintiff's counsel in this case, if what appears in the record is correct. Besides, the remarks now urged as objectionable were not called to the attention of the court in such manner as to secure his ruling thereon at the time they were made. We cannot sit in review upon these questions here, when it appears they were not passed upon or a ruling asked in the court below.[1]

The plaintiff is a Michigan manufacturing company, located at Detroit, and engaged in the manufacture of car trimmings. The defendant is a car company, located in New

[1] See *Mayo v. Wright*, 63 Mich. 32 (head note 1), as to correct practice ; *Battishill v. Humphreys*, 64 Id. 514 (head-note 4), as to latitude allowed counsel.

York, its president being W. D. Mann, and its superintendent. E. D. Mann. Its business was building, owning, and operating boudoir cars. The business correspondence between the parties commenced about January 10, 1884, when the plaintiff received a letter from E. D. Mann, saying:

" We are at present building six more of our boudoir cars, with Jackson & Sharp, at Wilmington, Delaware, and also have in prospect a large number, to be constructed within the next eight months. * * * The prospects of our business are very promising, and we think it may prove well worth your while to consider the matter of supplying us with your line of goods. *. * *

" [Signed] E. D. MANN,

" For MANN'S BOUDOIR CAR COMPANY."

In response to this letter Mr. Bennett, vice-president of the plaintiff company, went to New York to ascertain the financial standing of the defendant, and the prospects for trade; and the testimony of plaintiff's witness is to the effect that he was referred by the officers of the car company to the Jackson & Sharp Company for the information he desired; that he was told also by W. D. Mann, and other officers of the Mann Car Company, that the company was building other cars. The testimony further tends to show that the superintendent of the defendant car company came to Detroit, and while there a bid was put in by the plaintiff to furnish goods to trim the six cars, which was accepted by defendant, and the goods furnished accordingly; that afterwards other orders followed. Mr. Bennett further testified that, when he was in New York in January,—

"I saw Mr. Eugene Mann and Col. W. D. Mann, and I saw one Count Zakaroff, who was in the employ of the company, and some two or three other minor employés. I had conversations with all of them with reference to bids and trimmings. * * * The first order sold was to Mann's Boudoir Car Company. * * * Our company continued to sell goods to Mann's Boudoir Car Company."

In September, 1884, Mr. Bennett was again in New York, and says:

"I saw about the same parties that I had seen first. * * * I had a conversation with Col. W. D. Mann at that time. He told me he was the vice-president; * * * that anything that Mr. Stanley [the engineer] wanted for the use of the Mann's Boudoir Car Company, for the cars, to accept his orders for the same, and fill them, and they would be paid for by the company. * * * Col. Mann referred me to the Jackson & Sharp Company; Col. Mann and also Mr. Eugene Mann [who was then superintendent of the company]. He said to me that the Jackson & Sharp Company knew all about them,—knew all about the company. * * * Mr. Eugene Mann solicited me personally to make a bid on the trimmings for the Mann's Boudoir Car Company. * * * He delivered the order to me. I made the prices to him and with him, and he handed me the order. * * * Col. Mann expressly stated that the company would pay for any goods that Stanley might order. * * * My dealings with Mr. Stanley were carried on under the assurance by Col. Mann that orders given would be ratified by the company. * * * I was given to understand that he had authority to make purchases and changes in work."

This testimony, if true, would seem to authorize the credit to be given to the defendant, and not Col. W. D. Mann, and this, it appears, is what the plaintiff did do.

The testimony further tends to show that the business dealings between the parties continued without interruption until December, 1884, carried on occasionally by personal interviews between the officers of the several companies, but mostly by correspondence. The letters from the defendant generally show the company's card as a heading, giving the name of the company and its location, and are signed either "W. D. Mann," "E. D. Mann," "E. A. Stanley," or "E. D. Mann, for Mann's Boudoir Car Company," and letters sent by the plaintiff to defendant are addressed either to "Mann's Boudoir Car Co.," "W. D. Mann, Mann's Boudoir Car Co.," or to "W. D. Mann."

The goods furnished by plaintiff amounted, in all, to about $10,000, according to the testimony of plaintiff's witnesses.

About the twenty-seventh of September, 1884, the treasurer of the car company wrote to the plaintiff, returning a bill which had been sent addressed to the Boudoir Car Company, saying a mistake had been made in making out the bill against the company, instead of against W. D. Mann, who he says "is now building the cars at Wilmington on his own individual account. Please be careful in this regard in the future, as it might cause confusion of accounts." This letter was shown to the treasurer and to Col. Mann, and an explanation asked, and Mr. Hart was informed by them that it amounted to nothing; that the bills should be paid, and the business done, as before; "but nothing was said [as testified to by Mr. Hart, who was president of the plaintiff company] that the company was not dealing with us in the matter."

The foregoing contains the principal facts upon which the plaintiff claims the liability of the defendant rests.

Counsel for defendant insists that the Boudoir Car Company never had any business dealings with the plaintiff; that the goods were manufactured for Col. Mann, and not for the car company. Col. Mann was sworn in the case, and contradicts in his testimony Mr. Hart, Mr. Bennett, and Mr. Rumney, who was treasurer of the plaintiff company, in respect to the several conversations claimed to have been had by these witnesses with him, claims that cars were built by him, and afterwards turned over to the car company, and that he told Hart and Bennett that he was going to pay for the goods, and that they were his.

Upon the conflicting theories of these parties, and upon the conflicting testimony, the question of who is debtor for the balance due the plaintiff for its property sold was submitted to the jury, and they have found against the defendant. This finding cannot be disturbed, unless the circuit judge was at fault in the law given to the jury. We find no

error in any of the rulings upon receiving or rejecting testimony.

The defendant's first request to charge has already been considered.

The other special requests of counsel for defendant are as follows:

"2. It is immaterial what were the relations existing between the parties at the time of the first orders. What Mr. Bennett may have understood or have done can cut no figure in the case at bar. The testimony shows that the orders for the goods for which a recovery is sought were not filled until long after the receipt of the treasurer's letter by the plaintiff, advising plaintiff that the cars were being built for Col. Mann; and unless you find that the company, by its vice-president, actually gave the orders at the time of the interview between Col. Mann and Mr. Hart, about October 1, in New York, plaintiff cannot recover.

"3. The plaintiff must prove its case by a preponderance of evidence. A preponderance of evidence does not mean more witnesses, but plaintiff must satisfy you that it is entitled to recover by that evidence which convinces you of the right of plaintiff's claim.

"4. In this connection I charge you that the defendant's theory of the case is strongly supported by the correspondence and dealings between the parties subsequent to the interview between Col. Mann and Mr. Hart, in New York, on or about October 1, 1884.

" 5. The fact that the correspondence on part of plaintiff had, prior to the secretary's letter, been mostly addressed to the defendant, but thereafter the evidence shows that in all the correspondence the claim was treated as against Col. Mann, tends strongly to support the defendant's theory and Col. Mann's testimony.

" 6. You should consider the fact that not only were all statements for the goods in question rendered to Col. Mann, but all drafts were drawn on him personally. You should consider this in connection with the letter of January 9, 1885, by the plaintiff to Col. Mann, in which they speak of drawing on him, and not on the company; and in the same letter, 'We have made these goods for you in good faith; we have never questioned your credit.' This testimony is inconsistent with plaintiff's theory.

" 7. Unless you not only disregard the testimony of Eugene

Mann and Col. W. D. Mann, but give the forced construction to the correspondence subsequent to the treasurer's letter, the plaintiff cannot recover."

Counsel for the defendant also requested the court to submit the following special questions to the jury:

"1. Do you find that the statements of account, after the interview between Hart and W. D. Mann, were to be made to W. D. Mann as purchaser, and yet the credit in fact extended, not to Mann, but the company?

"2. If you answer the above question 'Yes,' then the following: Were the accounts rendered by the plaintiff in W. D. Mann's name so rendered for the purpose of deception?

"3. Did W. D. Mann deceive the car company, and those interested, by such accounts?"

The second and third the court refused to allow to go to the jury. The first special question was submitted to the jury for answer, as requested.

The second and third special questions relate to deception and fraud in the rendition of the accounts by the plaintiff, and whether or not Mann deceived the car company by such accounts. It was not claimed by any one upon the trial that the plaintiff rendered the accounts to any one for the purpose of deceiving any person, but for the purpose of getting its pay thereon, and there were no allegations of fraud in the pleadings, and the question was not made in the testimony any further than was included in the failure to pay the plaintiff's claim. These two questions were therefore properly withheld from the jury.

The defendant's second special request asks the court for conclusions of fact, and, besides, it was material what was understood by the plaintiff in that company's dealings with the defendant. The request was therefore properly refused.

The last four requests all have the same infirmity. They ask the court to give its view of the degree of weight which should be given to certain portions of the testimony. This was not proper, as has been several times held by this Court. *People v. Finley*, 38 Mich. 482; *Perrott v. Shearer*, 17 Id.

48; *Beurmann v. Van Buren,* 44 Id. 496; *People v. Simpson,* 48 Id. 474; *People v. Crawford,* Id. 498.

We find no error in the record, and the judgment must be affirmed.

CAMPBELL, C. J. and CHAMPLIN, J., concurred. MORSE, J., did not sit.