HERBERT *v.* DURGIS.

1. Appeal and Error—Statement of Questions Involved—Questions Reviewable.

   Questions not set forth in appellants' brief in statement of questions involved will not be reviewed.

2. Automobiles—Great Weight of Evidence—Liability—Fraud—Compromise and Settlement.

   In action for personal injuries resulting from head-on collision between automobile and defendant's truck on or near a narrow bridge, verdict for plaintiff against owner of truck and its driver *held,* not contrary to the great weight of the evidence on questions of liability and fraud in procurement of settlement.

3. COMPROMISE AND SETTLEMENT—FRAUD.

While the law favors settlements, it does not favor overreaching through false representations of material existing facts to one who is bedridden and suffering from shock and injuries of a serious nature and who was deceived by the falsifications.

4. APPEAL AND ERROR—FINANCIAL WORTH OF DEFENDANT—TRIAL.

Refusal of court to permit inquiry into financial worth of defendant at time of automobile accident where purpose of introduction of such testimony was to show duty on plaintiff's part to investigate his collectibility and not rely on representations of insufficient insurance made by adjuster seeking to effect a settlement on defendants' behalf *held,* not reversible error where plaintiff's offer to stipulate defendant's financial worth at amount suggested by his counsel was not accepted by latter.

5. AUTOMOBILES—ONE-WAY BRIDGES—INSTRUCTIONS.

Instruction relative to operation of motor vehicles on or near what was termed "practically a one-way bridge" at which head-on collision took place *held,* fair to both sides, where there was some evidence that it was 16 feet wide, and a sign was present designating it a one-way bridge.

6. TRIAL—AUTOMOBILES—INSURANCE.

Injection of question of insurance into automobile accident case *held,* not reversible error where it was a part of the case through action of the insurer in effecting a settlement and there is no way in which it could have been eliminated from the issue.

7. APPEAL AND ERROR—ARGUMENT OF COUNSEL—SAVING QUESTION FOR REVIEW—REMITTITUR.

Failure of defendant's attorneys to object timely to absolutely improper and prejudicial remarks of plaintiff's counsel in closing argument to the jury, ask for admonition, ruling or mistrial *held,* to remit Supreme Court to acceptance of finding of trial court that such remarks so influenced jury as to require conditional remission of $5,500 from $15,500 verdict.

8. DAMAGES—EXCESSIVE VERDICT—PAIN AND SUFFERING—DISFIGUREMENT.

In automobile accident case, verdict of $10,000, which had been reduced from $15,500 *held,* not excessive where plaintiff suffered skull fracture near an eye, broken upper jaw and clavicle, cuts and serious bruises, was permanently disfigured on eye and lip and at time of trial, 18 months after accident was still suffering various pains, nervousness, nausea and dizzy spells.

WIEST and TOY, JJ., dissenting.

Appeal from Huron; Boomhower (Xenophon A.) J. Submitted April 23, 1936. (Docket No. 50, Calendar No. 38,617.) Decided June 16, 1936.

Case by Gladys Herbert against Allan Durgis and John A. Howard for personal injuries sustained in a head-on collision between motor vehicles on or near a narrow bridge. Verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*Hugh K. Davidson, David E. Kull* and *Walter M. Nelson,* for plaintiff.

*Paul Woodworth (Kerr, Lacey & Scroggie,* of counsel), for defendants.

BUTZEL, J. At about 1:30 a. m. on July 16, 1933, Orville McMann, accompanied by Zelma Shanks and plaintiff Mrs. Gladys Herbert, while returning from a dance, drove a roadster in a northerly direction towards Forrester, Michigan, on M–29, a gravel road, approximately 16 feet wide, skirting the shore of Lake Huron. About a mile south of Forrester, the road proceeds across a bridge 40 feet long and from 13 to 16 feet wide, the testimony being in conflict as to the exact width. A sign at the northerly approach to the bridge read, "narrow bridge, one way traffic." As the roadster approached the bridge, a truck owned by defendant John A. Howard and loaded with fish, was being driven by defendant Allan Durgis in a southerly direction towards the bridge. Durgis was accompanied by Donald Howard, son of defendant Howard. The car and truck collided with tremendous force. The testimony again is in conflict as to whether the collision occurred on the bridge or near its north approach and after plaintiff's car had succeeded in crossing.

The injuries of Orville McMann were fatal, those of plaintiff, very serious. Zelma Shanks was also hurt. Plaintiff was taken to the Tweedie Hospital at Sandusky, Michigan, where she remained for 10 days. She was then taken to her home where she remained bedridden for approximately six weeks; subsequently she returned to Detroit. There was testimony showing that the clavicle and the upper jaw were fractured, the jaw to such an extent that the doctor was able to extend his finger from inside the mouth into the nasal cavity. It was shown that plaintiff also suffered a fracture of the skull near the eye and many other cuts and serious bruises. It was necessary to insert a steel frame into the mouth until the jaws healed and to wire in some teeth. At the time of the trial, over 18 months after the accident, plaintiff claimed she still was suffering from various pains, nervousness, nausea and dizzy spells. She complained particularly of a pain in the back of the neck at the base of the skull which made it impossible for her to lie flat in bed and necessitated the use of a pillow prop to hold up her head while lying down so as to avoid severe pain. She also has a permanent disfigurement of her lip, a drooping appearance of one of the eyes and a change in her facial expression as a result of the accident. The General Accident Assurance Corporation, the insurer of defendant Howard, sent its adjuster, Mr. Knott, to investigate the accident and adjust the claims. On July 25, 1933, he called at the Tweedie Hospital and, according to plaintiff, was introduced by Dr. Tweedie as the attorney for the insurance company. It is claimed that plaintiff made statements in the presence of a court stenographer to the effect that she did not know very much about how the accident occurred. Plaintiff categorically denies that she ever made such statements and attention is called to the

fact that she would have had great difficulty in speaking or being understood because of a gag in her mouth that was holding up the broken jaw.

The coroner held an inquest on account of the death of Orville McMann. The record does not contain the testimony taken before the coroner. The only eyewitness of the accident who could have testified was Durgis, as plaintiff, the only other eyewitness, was bedridden at the time. The persons who were at the scene of the collision were McMann, who was killed, Allan Durgis, who drove the fish truck, defendant Howard's son Donald, who testified that he was asleep when the collision occurred, Mrs. Herbert and Zelma Shanks. The latter could not give any of the details as to what occurred immediately prior to the collision. The coroner's jury held that the death was caused by an accident but did not place the blame on anyone. On August 10, 1933, Knott called at plaintiff's home late in the evening to make a settlement. Plaintiff testified that she believed Knott to be a lawyer as he had been introduced as such by Dr. Tweedie. Mary Shanks, who was present at the time with her daughter, also testified that Knott introduced himself as the lawyer for the insurance company when he came to plaintiff's home. Plaintiff claims that Knott strongly advised her and her husband not to engage an attorney and stated that the finding at the coroner's inquest conclusively showed they had no case; that six witnesses had testified at the inquest that the accident happened in the middle of the bridge and that McMann was to blame; that if they brought suit, they would have to bring it at Bad Axe, Michigan, and then they would have no chance because the insurance company would drag the case along and that it would be thrown out and forgotten; that the most

that could be paid in settlement was $1,270 owing to the fact that there was insufficient insurance to pay more after settling the McMann claim and leaving something to pay Zelma Shanks. Plaintiff further claims that she was in a nervous and sick condition at the time of the settlement. Mr. Herbert demanded at least $1,500 and the payment of the doctor's bill, but finally plaintiff and her husband together signed a release for $1,270, of which plaintiff claims $500 was for herself, $500 for her husband and $270 to pay the doctor and hospital bills. A draft was drawn for $1,000 payable to plaintiff and her husband and another one of $270 to pay the doctor and hospital bills, the proceeds from the $1,000 draft being subsequently divided equally between plaintiff and her husband. Plaintiff further claims that she was very unhappy over the amount of the settlement, and after consulting a lawyer, tendered back to the insurance company the sum of $500 plus legal interest, asserting that the settlement was secured through fraud and was not binding. The case was submitted to the jury who rendered a verdict for plaintiff for $15,500. The trial judge conditioned the denial of defendants' motion for a new trial upon plaintiff's filing a remittitur of $5,500, thus bringing the judgment down to $10,000. The remittitur was filed. Defendants have appealed. We shall not discuss the amount and form of tender or any other questions that have not been set forth in appellants' brief in the statement of questions involved.

Appellants claim that the verdict was against the great weight of the evidence. There is ample testimony both to show liability and that fraudulent representations, as to facts then existing, were made to induce the settlement. While some of the alleged representations are insufficient to set aside a settle-

ment agreement on account of fraud, others, such as the representations that there were six witnesses who testified at the inquest that McMann was at fault and that he could get a carload of witnesses from Detroit who would testify to like effect, and that the amount of the insurance was insufficient to pay more than $1,270, were manifestly untrue and undoubtedly tended to induce plaintiff to accept a meagre amount for the very large damages she would be entitled to if defendants were responsible for her injuries. The law favors settlements but not overreaching through false representations of material existing facts to one who is bedridden and suffering from shock and injuries of a most serious nature and who was deceived by these falsifications.

Error is claimed because the court refused to permit inquiry into the financial worth of defendant Howard at the time of the accident. The purpose of introducing the testimony was to show that there was a duty on plaintiff's part to investigate Howard's collectibility and not to rely solely on Knott's representation of insufficient insurance. Plaintiff's attorneys objected to it on the ground that it was not shown to have been communicated to plaintiff. Plaintiff's attorneys attempted to cure the alleged error by later offering to permit the introduction of such testimony and when they were informed that the witness was no longer available, they offered to stipulate as to the financial worth of defendant Howard at such amount as suggested by counsel for defendants. This offer was not accepted. We find no reversible error under the circumstances.

The appellants further claim that the court erred when he instructed the jury that the bridge was practically a one-way bridge unless the people were very careful in driving across it. It is true that

there was some testimony that the bridge was 16 feet wide. The court stated that if the "truck arrived there first, it was the duty of Orville Mc-Mann to wait with his car on the south side of the bridge until the truck crossed over. If Allan Durgis was the one late in arriving at the bridge it was his duty to slow his car down and wait until the other car had crossed. * * * That it was practically a one-way bridge unless the people were very careful in driving across it." He further stated that there were signs there and the proofs showed that Orville McMann and Mr. Durgis were acquainted with this bridge. The jury had all the testimony including the fact that there was a sign on the bridge which stated that it was a one-way bridge. We find no reversible error in the judge's charge; it was fair to both sides. The jury heard all the facts.

The question of insurance was not purposely injected into the case; it was part of the case through the action of the insurance company and there was no way in which it could have been eliminated from the issue.

Error is claimed because of improper remarks made to the jury by counsel for plaintiff in the closing argument which was taken down by the court stenographer. Some of the remarks were absolutely improper and made for the purpose of arousing prejudices of a farming community against an insurance company. Plaintiff's attorneys in referring to the attorney for defendant said:

"My brother sits in front of a pile of money bags and criticizes us."

Plaintiff's attorneys claim that these remarks, so obviously improper, were provoked by the arguments of the attorney for the defendants. The clos-

ing remarks of the latter were not taken down by the court reporter nor was objection made to them. Attorneys for defendants, on the other hand, made no objection whatsoever to the closing argument of plaintiff's counsel. The judge, however, found that the argument did influence the size of the verdict and therefore reduced it from $15,500 to $10,000. The judge held that the improper remarks of counsel for plaintiff affected the amount of the verdict. We must accept his finding in the absence of any exception made to the remarks at the trial. The rule, "no objection-no ruling-no error presented," is the rule of this court and an attorney may not stand by, fail to make timely objections to improper remarks of opposing counsel, and then take his chances on the verdict of the jury, and if not satisfied with the verdict, then make his objections on a motion for a new trial for the first time. If the question is thereafter raised, we are bound solely by the findings of the judge. Had objections been promptly made, the court could have reprimanded the attorneys, fully instructed the jury not to pay any attention to the improper remarks, or if they were so prejudicial so that the harm could not be eradicated by proper admonition, then declare a mistrial. *Mayo* v. *Wright,* 63 Mich. 32; *Hart Manfg. Co.* v. *Mann's Boudoir Car Co.,* 65 Mich. 564; *Miller* v. *Lachman,* 117 Mich. 68; *Bokenfohr* v. *Bush,* 117 Mich. 444; *Pierson* v. *Railroad Co.,* 149 Mich. 167; *Close* v. *Railroad Co.,* 169 Mich. 392; *Johnson* v. *Grondin,* 170 Mich. 447; *Habitz* v. *Railroad Co.,* 170 Mich. 71; *Bates* v. *Kitchel,* 166 Mich. 695; *Wiers* v. *Shaw-Walker Co.,* 171 Mich. 324; *Gubas* v. *Bucsko,* 219 Mich. 553; *Patterson* v. *Gore,* 177 Mich. 591; *Greenleaf* v. *Lambert,* 192 Mich. 411, 418; *Freeman* v. *Hoag,* 217 Mich. 587; *Kasprzak* v. *Chapman,* 197

Mich. 552; *Sima* v. *Wright,* 268 Mich. 352; *Curth* v. *New York Life Ins. Co.,* 274 Mich. 513.

We have heretofore referred to the injuries suffered by plaintiff. She admitted that at the time of the trial she was able to drive a car in the city and that she had ridden horseback once a week during the summer. Defendants produced medical experts who testified that it was difficult to find any physical cause for the pains at the back of her neck, although she did produce in court the wooden support she had to use when lying down. The question of her credibility was one for the jury. Although $10,000 may be considered by some as a large amount in view of the extent of the recovery made by plaintiff, nevertheless, when the pain and suffering that she underwent, her permanent disfigurement and possibly other injuries that will cause her pain and inconvenience for a long time to come, if not for the balance of her life, are considered, we cannot say that the amount as reduced by the judge was excessive.

The judgment for plaintiff is affirmed, with costs.

NORTH, C. J., and FEAD, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred with BUTZEL, J.

WIEST, J. (*dissenting*). Defendants moved for a new trial. The court, in compliance with Court Rule No. 47 (1933), filed a decision thereon, stating in part:

"The court is of the opinion that the case was properly submitted to the jury, but the amount of the verdict is excessive. The court is of the opinion that the jury was influenced by the character of the argument of the plaintiff's attorney. * * *

"The court is of the opinion that the verdict of the jury was influenced by improper argument of

the plaintiff's counsel. The case was tried before the jury as the case of the insurance company in fact, and upon more than one occasion the plaintiff's attorney appealed to the jury at the same time holding up before the jury, as it were, the money bags of a big insurance company. While there was no objection to this argument, it is the court's opinion that it is close to the line of being error without any objection being made.''

The court denied a new trial if plaintiff's attorneys filed a waiver of the amount above $10,000 within 10 days.

The verdict was for $15,500, $500 of which represented the tender back of money received in the settlement. If $5,000 of the verdict can be said to have been engendered by improper argument of counsel then it necessarily follows that defendants have not had the character of verdict required of a jury in this State, and no reduction in amount can be held to right the wrong.

Where the trial judge so finds improper argument reflected in the verdict we have indisputable evidence of a wrong accomplished, and we have the power to render the wrong nugatory.

In so swelling the damages by improper argument counsel for plaintiff tainted the verdict and, under the findings of the trial judge, there should be a new trial, with costs to defendants.

Toy, J., concurred with WIEST, J. POTTER, J., took no part in this decision.