# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

          Plaintiff-Appellee,

v

CHRISTOPHER PATRICK ALLEN,

          Defendant-Appellant.

UNPUBLISHED
January 26, 2016

No. 324029
Genesee Circuit Court
LC No. 13-034266-FC

Before: STEPHENS, P.J., and HOEKSTRA and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of one count of first-degree criminal sexual conduct, MCL 750.520b(1)(a), and one count of aggravated indecent exposure, MCL 750.335a(2)(b). He was sentenced to 25 to 40 years in prison for the first-degree CSC conviction and to a concurrent term of 16 to 24 months in prison for the aggravated indecent exposure conviction. For the reasons stated below, we reverse defendant's convictions and remand to the trial court for a new trial.

Defendant presents multiple claims of prosecutorial misconduct in his attorney brief and Standard 4 Brief. All of defendant's claims were unpreserved, save one. An unpreserved claim of prosecutorial misconduct is reviewed for plain error that affected the defendant's substantial rights. *People v Abraham*, 256 Mich App 265, 274; 662 NW2d 836 (2003). Under this standard, reversal is warranted only where there was plain error, i.e. clear and obvious error; the error affected substantial rights, i.e., the error affected the outcome of the lower court proceedings; and the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity or public reputation of judicial proceedings. *People v Borgne*, 483 Mich 178, 196-197; 768 NW2d 290 (2009).

The test for prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). Prosecutorial misconduct issues are decided on a case-by-case basis, and the reviewing court must examine the record and evaluate a prosecutor's remarks in context. *Id.* Reversal is not required where a curative instruction could have alleviated any prejudicial effect. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements." *Id.*

-1-

In his attorney brief, defendant argues that prosecutorial misconduct occurred when Detective Brian Abraham was allowed to testify regarding defendant's credibility and when Detective Abraham and Sergeant Kissel were allowed to testify regarding defendant's silence.

During direct examination by the prosecutor, Detective Abraham testified as follows:

> *PROSECUTOR*: Thank you. Detective, during the time that you were interviewing Christopher Allen did you believe he was telling you the truth?
>
> *WITNESS*: No. I did not.
>
> *PROSECUTOR*: Why was that?
>
> *WITNESS*: Um, a couple signs that I've seen. I've been interviewing people over sixteen years. Um, when I come to your house to take a report I'm interviewing you. Even if it's a larceny of a bike, I'm interviewing you. You can tell. Number one, the facts of the case that was given to me from the beginning, um, it's a very serious complaint that's being issued. At no time during my interview did I see or hear the suspect—I should say maybe showing emotion, deny any charges. All he did was explain what he did. He never once said no. I did not do this. My wife, she hates me. This is so serious of an event that if I was in his shoes I would be pacing the room. I would not be just sitting there with my head down. I would probably be crying. I'd have so much emotions going through me, myself and I've seen that through other victims, especially if you were wrongfully accused of something.
>
> *PROSECUTOR*: You said through other victims. You mean other suspects?
>
> *WITNESS*: I'm sorry. I'm sorry. Yes. Other suspects being accused of any serious crime; bank robbery, armed robbery, a CSC case, even petty larceny. If they didn't do it you generally see some kind of reaction besides just a calm, relaxed, talking with his hand over his mouth, and just staying very calm.

The prosecutor concedes that Detective Abraham's testimony was an improper comment on another's credibility. See *People v Musser*, 494 Mich 337, 348-349; 835 NW2d 319 (2013); *People v Buckey*, 424 Mich 1, 16-18; 378 NW2d 432 (1985). Further, we conclude that the error was plain, in that it was "clear and obvious." *Borgne*, 483 Mich at 196-197. However, because defense counsel effectively cross-examined Detective Abraham regarding his opinion of defendant's credibility, it is unlikely that this error alone affected the outcome of the trial.

During the prosecutor's direct examination, Sergeant Kissel explained that he was not involved in arresting defendant, but that he observed the arrest because he "happened to be outside" when defendant was arrested. The following exchange then occurred:

> *PROSECUTOR*: At the time that you saw the suspect did he ever say anything like why am I being arrested? What's going on? I don't understand what's happening?

> *WITNESS*: I never heard him ask any of those questions.
>
> *PROSECUTOR*: Thank you. I have nothing further.

Later, during her closing arguments, the prosecutor argued:

> When he got back to the house he just turned himself in. He didn't say I didn't do anything. She's lying. She's making it up. He didn't say why am I being arrested. He threw his keys on the top of the car and put his hands behind his back because he knew he was caught. He knew that he had done what he was accused of doing.

Sergeant Kissel's testimony indicates that he observed defendant while defendant was being arrested and immediately before the arrest. There was no indication that defendant had been given his *Miranda* rights when Sergeant Kissel observed him failing to ask why he was being arrested. "A defendant's constitutional right to remain silent is not violated by the prosecutor's comment on his silence before custodial interrogation and before *Miranda* warnings have been given." *People v McGhee*, 268 Mich App 600, 634; 709 NW2d 595 (2005); see also *People v Schollaert*, 194 Mich App 158, 160-167; 486 NW2d 312 (1992) (holding that the defendant's silence was not constitutionally protected because it did not occur during custodial interrogation or in reliance on *Miranda* rights). Therefore, defendant has not shown error in Sergeant Kissel's testimony.

During cross-examination, Detective Abraham testified that he was not allowed to ask defendant whether he sexually assaulted his daughter. The prosecutor later questioned Detective Abraham as follows:

> *PROSECUTOR*: You said a few minutes ago when you were speaking with Ms. Young that you weren't allowed to ask the question. Was that because the Defendant asked to end the interview?
>
> *WITNESS*: Yes. The Defendant during my questioning he—we were close. He was showing signs that he wanted to talk. Um, as I sat and spoke with him his head is nodding. Those are obvious signs when you're interviewing that—to somebody like myself you are getting closer for somebody to break down. Um, he asked for a moment. At that time I told him to take just a moment or go ahead and acknowledged that moment and I thought for sure that's when he was going to begin to say blank, blank, blank. Instead he asked for an attorney. I'm no longer allowed to question him any further. . . .

A plain error occurred because Detective Abraham clearly commented on defendant's silence post-*Miranda*. Because Detective Abraham's reference to defendant's post-arrest, post-*Miranda* silence was brief and the prosecutor did not use the testimony in her arguments against

defendant, however, it is unlikely that this error alone affected the outcome of the trial or the fairness and integrity of the trial.[1]

In defendant's supplemental brief filed in propria persona pursuant to Supreme Court Administrative Order No. 2004–6, Standard 4, defendant argues two additional claims of prosecutorial misconduct. There he contends that the prosecutor appealed to the sympathy of the jury and violated both MCR 6.201(B) and *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), with the late disclosure of a recording of defendant's police interview.

During voir dire, the prosecutor stated as follows:

> Um, the allegations in this case are kind of disturbing. You're going to hear—and I'm going to just let you know. You going to hear that—the allegations are that the Defendant assaulted his twenty-one month old daughter. I'm sorry. I have a fifteen month old so it makes me emotional and I wasn't going to get emotional. But it does make me emotional. I'm sorry. . . . Does anyone think they can't hear that? I'm sorry. I really don't ever get emotional in court so I'm sorry.

After the jury was chosen and left the courtroom, defense counsel objected to the prosecutor appealing to the sympathy of the jury by having "multiple breakdowns" and by "making the correlation between her children and the victim in this case." Defense counsel moved for a mistrial on the same basis. The trial court denied the motion for a new trial, but, at defense counsel's request, instructed the jury that it "must not let sympathy or prejudice influence your decision."

It is improper for a prosecutor to appeal to the sympathy of the jury. *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011). Further, a prosecutor may not argue facts not in evidence. *People v Lee*, 212 Mich App 228, 255; 537 NW2d 233 (1995). While the prosecutor's conduct here was improper, we conclude that any prejudice was cured by the trial court's instruction. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008) ("Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements."). Therefore, defendant has not shown that the prosecutor's conduct during voir dire alone denied him a fair trial.

Also in defendant's Standard 4 Brief, defendant argues that he was denied a fair trial by the prosecutor's late disclosure of a recording of his police interview. Defendant contends that

---

[1] Defendant also argues in his attorney brief that his right to a properly instructed jury was violated by the trial court's misleading response to a jury question. We conclude that defendant waived any error, however, by expressing satisfaction with the trial court's response to the jury's question. *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011).

the late disclosure violated both MCR 6.201(B) and *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). We review de novo a claim that a defendant was denied his due process rights by the prosecutor's failure to timely disclose exculpatory evidence. *People v Schumacher*, 276 Mich 165, 176; 740 NW2d 534 (2007).

Under MCR 6.201(B), upon request, the prosecutor must provide to the defendant "any written or recorded statements" by a defendant. If a party fails to comply with the rule, the court, in its discretion, may, among other options, grant a continuance, prohibit the party from introducing the undisclosed evidence, or "enter such other order as it deems just under the circumstances." MCR 6.201(J). "When determining the appropriate remedy for discovery violations, the trial court must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance." *People v Banks*, 249 Mich App 247, 252; 642 NW2d 351 (2002).

Here, the prosecutor violated MCR 6.201(B) by failing to turn over the recording to the defendant when defendant made his initial discovery request. Nevertheless, because defendant had already been given a police statement that summarized the interview, we do not believe that the late disclosure alone denied defendant a fair trial.

A *Brady* violation is shown where (1) evidence is suppressed by the prosecution either inadvertently or in bad faith, (2) the evidence is favorable to the accused because it is either exculpatory or impeaching, and (3) the evidence is material, i.e. there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). Defendant has not shown that the videotape was material to his defense. It is undisputed that the defense received a police statement that summarized defendant's police interview. Defendant has not pointed to any evidence in the videotaped statement that was not included in the police report and that would have changed the result of the proceedings. Because defendant has not shown that the videotape was material to his defense, defendant has not demonstrated a *Brady* violation.

Standing alone, defendant's claimed errors of prosecutorial misconduct do not warrant reversal. We conclude, however, that the cumulative effect of the numerous errors in this case amount to error requiring reversal. *People v Cooper*, 236 Mich App 643, 659-660; 601 NW2d 409 (1999). Given the compendium of errors as a whole directed toward defendant's most basic due process rights, we cannot conclude that defendant received a fair trial. *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001). "A prosecutor can deny a defendant his or her right to a fair trial by making improper remarks that so infect the trial with unfairness as to make the resulting conviction a denial of due process." *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014) (quotation omitted). The prosecutor's crying during jury selection and comparing the victim in this case to her own child elicited an immediate emotional response from the jury. Thereafter, two jurors raised their hands, stated that they too were getting very emotional and could not be fair, and asked to be excused from the jury. "A fundamental pillar of our legal system is that a person is presumed innocent until proven guilty." *People v Rosales*, 160 Mich App 304, 312; 408 NW2d 140 (1987). During direct examination, Detective Abraham was specifically asked by the prosecution to comment on defendant's guilt and in effect, act as a "human lie detector." *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007). After noting his 16 years of interrogation experience, Detective Abraham told the jury that he did not

believe defendant was telling the truth and why. Issues of credibility are the province of the jury and it is improper for the prosecutor to ask a witness to comment on the credibility of another witness. *Dobek*, 274 Mich App at 71. Defendant also has the right to not have his post-*Miranda* silence used against him. *People v Shafier*, 483 Mich 205, 212-213; 768 NW2d 305 (2009); *Wainwright v Greenfield*, 474 US 284, 290–291; 106 S Ct 634; 88 L Ed 2d 623 (1986). "[P]rosecutorial references to a defendant's post-arrest, post-*Miranda* silence violate a defendant's due process rights under the Fourteenth Amendment of the United States Constitution." *Shafier*, 483 Mich at 212-213. Detective Abraham was also allowed to testify that right before he believed defendant would confess, defendant became silent and then exerted his right to counsel. Sergeant Kissel's testimony and the prosecutor, in her closing argument, reminded the jury of defendant's silence on other occasions that were not on their own misconduct, but did compound the already improper inferences to defendant's guilt, silence and exercise of constitutional rights. The prosecutor also clearly violated MCR 6.201(B). "[A] discovery violation can result in constitutional error when it violates a defendant's right to due process." *People v Elston*, 462 Mich 751, 770; 614 NW2d 595 (2000). In this instance, no prejudice resulted because a written summary of the taped interview was available. The prosecution's duty to disclose remains regardless of whether the prosecutor had good or bad intentions. *Brady*, 373 US 86. Reversal for trial error is warranted when it is determined that the defendant was "convicted through a judicial process which is defective in some fundamental respect." *Burks v United States*, 437 US 1, 15; 98 S Ct 2141, 2149; 57 L Ed 2d 1 (1978). "When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished." *Id*. We conclude that the cumulative effect of error in this case undermines the confidence in the reliability of the verdict and a new trial is warranted. *Dobek*, 274 Mich App at 106.

For the foregoing reasons, we reverse defendant's convictions and remand this case for further proceedings. Given our disposition, it is unnecessary to address the remainder of defendant's Standard 4 Brief claims regarding the ineffective assistance of counsel.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Joel P. Hoekstra
/s/ Deborah A. Servitto